J-A16012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GOVINDARAJU RAMALINGAM, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| KELLER WILLIAMS REALTY GROUP, INC., & JANET PALLADINO, | |
| Appellees | No. 2185 EDA 2014 |

Appeal from the Judgment Entered August 26, 2014
in the Court of Common Pleas of Delaware County
Civil Division at No.: 12-051685

BEFORE: LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                          **FILED JULY 20, 2015**

Appellant, Govindaraju Ramalingam, appeals from the judgment entered, after a bench trial, in favor of Appellees, Keller Williams Realty Group, Inc. and Keller Williams real estate agent, Janet Palladino, defendants at the trial. Appellant personally handed over to the builder his check as a deposit for the construction of a house, as required in the agreement of sale he signed. Nevertheless, he maintains that Appellee Palladino was liable for not placing his deposit payment into escrow, or advising him to do so. We conclude that the trial court correctly decided that Appellant waived any rights to escrow by accepting and complying with the builder's direct deposit requirement. Accordingly, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

The trial court did not provide findings of fact.[1]  We derive the facts pertinent to disposition from our independent review of the record.

On September 30, 2009, Appellant ("Buyer") signed an "Agreement of Sale For New Construction" for a house to be built on a lot at 23 Calabrese Drive in Media, Pennsylvania by CLM Builders, Inc. (Seller).[2]  (**See** Plaintiff's Exhibit 3).  "Miscellaneous Provision No. 1" of the agreement provided as follows:  "**Buyer agrees the deposit shall be paid directly to the Seller and will be used toward the construction of buyer's specific property.**"  (**See id.** at 7 (emphasis added); **see also** Plaintiff's First

---

[1] Instead, it merely presents counsels' competing versions of proposed findings of fact, and adds selected excerpts from trial testimony, without expressly resolving any discrepancies.  (**See** Trial Court Opinion, 11/18/14, at 2-14).  The trial court offers one assessment of credibility.  (**See id.** at 21).  The trial court's further assessment of credibility and the weight of the evidence as to disputed questions of fact could have been helpful to our review.  Nevertheless, the underlying facts directly relevant to the disposition of this appeal are not in substantial dispute.  Although the parties differ in their versions of a few ancillary matters, the applicable legal issues are clear, and our appellate review is not impeded.

Where a trial judge, following a non-jury trial, renders a general decision unaccompanied by specific findings of fact, the judge's decision is to be accorded the same weight and given the same effect as a jury verdict.  **See Totten v. Lampenfeld**, 466 A.2d 663, 664 (Pa. Super. 1983).

[2] In his brief, Appellant maintains that the address was **15** Calabrese Drive. (**See** Appellant's Brief, at 5).  However, in his own proposed statement of facts, Appellant stated (as did Appellees) that the lot was at **23** Calabrese Drive.  (**See** Plaintiff's Proposed Findings of Fact and Conclusions of Law, 3/20/14, at unnumbered page 2 ¶ 4).  Lot numbers were assigned to houses during construction; street addresses were not assigned until settlement. (**See** N.T. Trial, 1/22/14, at 148).  The discrepancy is not material to our disposition.

Amended Complaint, 8/22/12, Exhibit A, at unnumbered page 8; Trial Ct. Op., at 18). The agreement was approved on behalf of Seller, CLM Builders, Inc., by Stephen Lynch. Appellee Palladino witnessed both signatures.

Appellant also initialed and signed a broker agreement, captioned "Business Relationship Between Broker and Buyer," dated September 30, 2009. (*See* Plaintiff's Exhibit 1). Ms. Palladino signed in acceptance on behalf of Keller Williams. The agreement provided in pertinent part that the broker (Keller Williams) may also represent the Seller. (*See id.* at 1, ¶¶ 3, 4). Appellee Palladino was designated the "licensee" of the broker. Section 10 of the broker agreement, DEPOSIT MONEY, in pertinent part provided:

> (A) Broker will keep (or will give to the listing broker, who will keep) all deposit monies **that Broker/Licensee receives** in an escrow account as required by the real estate licensing laws and regulations until the sale is completed or the agreement of sale is ended. Buyer agrees that Broker may wait to deposit any uncashed check that is received as deposit money until Buyer's offer has been accepted.

(*Id.* at 2 ¶ 10) (emphasis added). The broker agreement also included the following notice to the buyer:

> **EXPERTISE OF REAL ESTATE AGENTS** Pennsylvania real estate agents are required to be licensed by the Commonwealth of Pennsylvania and are obligated to disclose adverse factors about a property that are reasonably apparent to someone with expertise in the marketing of real property.
>
> (A) If Buyer wants information regarding the specific conditions or components of the property which are outside the Agent's expertise, Buyer is encouraged to seek the advice of an appropriate professional.

> (B) **If Buyer wants financial, legal or any other advice, Buyer is encouraged to seek the services of an accountant, lawyer, or other appropriate professional**.

(**Id.** at 3, Notices to Buyers) (emphasis added).

Furthermore, and also on September 30, 2009, Appellant signed a disclosure form regarding dual agency, referencing the agreement of sale of September 30, 2009, and acknowledging that the dual agency had been disclosed to him prior to the referenced offer to purchase. (**See** Plaintiff's Exhibit 2).[3] The dual agent disclosure notice expressly designated Keller Williams as "Broker and as Dual Agent" which "owes fiduciary duties to both Buyer and Seller[ ]" and named Ms. Palladino as "Designated Licensee" of both Seller and Buyer, respectively. (**Id.**).

Several days later, on October 5, 2009, again in the presence of Appellee Palladino, Appellant paid $44,990 (ten per cent of the sale price of the house), by personal check made payable to CLM Builders, Inc., directly to Stephen Lynch, apparently a principal of CLM Builders, along with Thomas Fischer. (**See** Plaintiff's Exhibit 4).

---

[3] In fact, there is no dispute that Appellant first met Ms. Palladino in the spring of 2009, when she was representing CLM Builders at an "Open House" for the sale of the property adjacent to 23 Calabrese Drive, 25 Calabrese Drive. Appellee Palladino testified that Appellant offered $360,000 for that property, which was listed for $500,000. (**See** N.T. Trial, at 154). CLM rejected the offer. (**See id.**).

Appellee Palladino testified that Appellant would not give the check to her, and instead insisted on handing it over personally to Mr. Lynch, necessitating the separate second meeting. (*See* N.T. Trial, 1/22/14, at 167). Appellant does not dispute handing the check over personally, but claims that he was following the instructions of Ms. Palladino. (*See id.* at 227) ("I totally relied on my agent. So whatever she said, that's what I did it [sic].").

In any event, Appellant soon got embroiled in disputes over construction, including the square footage of the house. He complained that his house was smaller than the adjacent one that he first wanted. (*See id.* at 181-82). There were also disputes about certain "extras," and changes.

Notably, Appellant apparently wanted a standard second floor laundry room removed and relocated to the basement, the space redesigned, and replaced with the installation of a religious altar. (*See* Defendants' [Appellees'] Proposed Findings of Fact and Conclusions of Law, 2/25/14, at unnumbered page 3 [3b], ¶ 21; *see also* Plaintiff's [Appellant's] Proposed Findings of Fact and Conclusions of Law, 3/20/14, at unnumbered page 9 ¶¶ 45-48).

CLM Builders apparently objected because of the adjustments of space allocation required to convert the laundry room to an altar room, the extra cost of installation of plumbing fixtures to the basement, and possible

difficulties in re-selling the house without second floor laundry facilities if the deal fell through (which, in the event, it did).

In his proposed findings of fact, Appellant stated that he retained a lawyer, Raymond Falzone, Esq. in June of 2010.[4]  (*See* Plaintiff's Proposed Findings of Fact and Conclusions of Law, 3/20/14, at unnumbered page 7, ¶ 28).  Mr. Falzone sent a demand letter to CLM and Keller Williams.  (*See* Plaintiff's Exhibit 5, Letter of Raymond J. Falzone, Jr. to Steve Lynch, CLM Builder [sic]; and Janet Palladino, Keller Williams, 6/08/10).  The letter itemized numerous issues of disagreement and threatened litigation if there was no response in seven days.  (*See id.* at unnumbered pages 1-4).

The letter did not contain a specific "grand total" but included a demand for a credit of at least $49,014.80 (for the reduced square footage), and other claims which Mr. Falzone agreed at trial could have cost up to $70,000.  (*See* N.T. Trial, at 115).

Attorney Falzone also testified at trial that if he had been retained in advance of the agreement of sale (rather than after the fact), he would have

---

[4] On cross-examination, Mr. Falzone first testified that he was retained around April or May of 2010.  (*See* N.T. Trial, at 111).  On prodding from defense counsel, he amended that to "probably . . . somewhere in '09."  (*Id.* at 112).  Defense counsel, Thomas J. Gregory, Esq., maintained that Appellant had previously testified under oath that he retained Attorney Falzone in September of 2009.  (*See id.* at 111-12).  Attorney Falzone replied that he was not aware of that.  (*See id.*).  Despite the obvious discrepancies, there is no dispute that Appellant did not retain Mr. Falzone until after the agreement of sale was signed.  (*See id.* at 112).

advised against the deposit of money directly with the builder. (**See id.** at 108).

However, when asked, over objection of Appellant's counsel,[5] what his advice would be if the builder refused to sell under those conditions, Mr. Falzone replied, "Then [Appellant would] have to make a decision whether he wanted to go forward with the Agreement of Sale on those terms or want to do something else . . . ." (**Id.** at 109).

When asked why he did not demand return of the deposit in this matter, Mr. Falzone replied,

> "We — it was past the point . . . . It was already — the horses were already out of the barn. The money had already been put somewhere with the builder and it was made payable to CLM, so it was — the money was gone into CLM's coffer, I'm thinking."

(**Id.** at 112-13; **see also** Trial Ct. Op., at 12).

While the parties do not agree on how the transaction actually unraveled, based on the record and the trial court's review, neither Appellant nor his counsel demanded return of the deposit from CLM, or requested release from the agreement of sale.[6] (**See** Trial Ct. Op., at 12-13). There

---

[5] The trial court overruled the objection.

[6] The trial court rejected the claim that CLM had no money to refund the deposit (which was never requested), based on documentary evidence provided at trial reflecting a court record that no corporate bankruptcy had occurred, and a department of state record that CLM continued to be a

*(Footnote Continued Next Page)*

- 7 -

was in fact no formal release or termination agreement. However, there is also no dispute that the parties were unable to settle their differences.[7]

The matter proceeded to arbitration. At the arbitration, Ms. Palladino apparently testified that CLM ceased construction because the price reductions which Appellant demanded left insufficient funds for completion of construction. After the arbitration, Appellant filed a complaint in the court of common pleas.[8]

The bench trial occurred on January 22, 2014. In addition to Appellant's testimony, the court permitted Appellant's counsel to call Ms. Palladino to testify for the plaintiff (Appellant here) as of cross. As previously noted, Appellant's retained transaction attorney, Mr. Falzone, also testified. Both parties' counsel agreed to submit written reports of their two respective experts for the court's consideration. (**See** N.T. Trial, 1/22/14, at 239, 242; **see also** Plaintiff's Exhibit 9, opinion letter of Alfred V. Altopiedi, [Esq.] to Anthony S. Pinnie, Esq. [Appellant's trial counsel], 9/10/13; and Defendant's Exhibit 6, opinion letter of Barry W. DeGroot, Esq. to Glen D.

_(Footnote Continued)_ _____

Pennsylvania corporation in good standing. (**See** Trial Ct. Op., at 6; **see also** N.T. Trial, at 240-41).

[7] CLM ceased construction and the bank eventually foreclosed on the property, which was completed by another builder and sold to a third party.

[8] Appellees filed preliminary objections, which the trial court overruled. (**See** Order, 11/26/12). They are not at issue in this appeal.

Kimball, Esq. and Thomas J. Gregory, Esq. [Appellees' trial counsel], 10/09/13). Neither expert testified or was cross-examined.

Referencing their expert's report, the defense made a *de facto* final argument that because Appellant refused to pay market value for the property, he was the cause of his own damages. (*See* N.T. Trial, at 243). The defense requested (and the court agreed) that Appellee Palladino's testimony as of cross be incorporated by reference as testimony for the defense. The defense called no other witnesses. After the admission of the exhibits, the defense rested. (*See id.* at 244).

On April 28, 2014, the trial court entered a verdict in favor of both Appellees, and against Appellant. (*See* Verdict, 4/28/14). The court also dismissed Appellant's amended complaint with prejudice. (*See id.*). On May 7, 2014, Appellant filed a motion for post-trial relief, seeking a new trial or judgment in his favor, which the trial court denied. (*See* Order, 7/09/14).

Appellant appealed.[9] (*See* Notice of Appeal, 7/17/14). At the direction of this Court, the trial court entered judgment on August 26,

_____

[9] Appellant filed a timely court-ordered statement of errors on August 8, 2014. The trial court filed its opinion on November 18, 2014. *See* Pa.R.A.P. 1925.

2014.[10]

Appellant raises four questions for our review:[11]

1. Was [Appellee] Palladino negligent *per se* for violating the Pennsylvania Code as it relates to escrow?

2. Did the court err by failing to conclude that [Appellee] Palladino, as a dual agent, was negligent for breaching her duty/fiduciary duty?

3. Was there ambiguity between the Keller Williams' contract and the Builder's contract?

4. Did the trial judge improperly disregard [Appellant's] expert and his opinion?

(Appellant's Brief, at 2-5).[12]

_____

[10] Therefore, Appellant's notice of appeal is deemed timely filed. **See** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

[11] Appellant omits a copy of the statement of errors in his brief, failing to comply with Pennsylvania Rule of Appellate Procedure 2111(a) (11). Appellant originally presented fourteen allegations of error in his Rule 1925(b) statement. (**See** "Concise Statement of Matters Complained of on Appeal," 8/08/14, at unnumbered pages 1-3). Many of the errors asserted were repetitive or overlapping. On appeal, as noted, Appellant presents four questions. For completeness and clarity, we deem all issues not properly preserved and fairly comprised or suggested by the statement of four questions involved to be abandoned on appeal. **See** Pa.R.A.P. 2116(a). In particular, all claims against Keller Williams under *respondeat superior* and failure to supervise are abandoned, and we deem them waived.

[12] We admonish counsel that this presentation of the questions involved fails to comply with our Rule 2116, which, in pertinent part directs that "[e]ach question shall be followed by an answer stating **simply** whether the court or government unit agreed, disagreed, did not answer, or did not address the question." Pa.R.A.P. 2116(a) (emphasis added). Here, counsel has
*(Footnote Continued Next Page)*

- 10 -

Our standard of review is well-settled.

> Our review of the trial court's decision after a non-jury trial is limited to determining whether the findings of the trial court are supported by the competent evidence and whether the trial court committed error in the application of law. It is not our role to pass on the credibility of witnesses, as the trial court clearly is in the superior position to do so.

*Kornfeld v. Atl. Fin. Fed.*, 856 A.2d 170, 173 (Pa. Super. 2004), *appeal denied*, 871 A.2d 192 (Pa. 2005) (citation and internal quotation marks omitted).

In his first question, Appellant asserts the trial court erred by not finding that Appellee Palladino was negligent *per se* for violating the Pennsylvania Code provisions pertinent to escrow. (*See* Appellant's Brief, at 3). However, in the argument section, Appellant, in disregard of our rules, then combines argument for two independent issues, *viz.*, that Appellee Palladino was negligent under traditional common law principles, with another abbreviated argument claiming negligence *per se*.[13] (*See id.* at 10-11). Appellant has failed to comply with Pa.R.A.P. 2119:

---
*(Footnote Continued)*

impermissibly appended to each question extended argument in support of Appellant's claims. Argument is for the argument section. *See* Pa.R.A.P. 2119. Our Rules neither countenance nor permit the statement of questions to be an opportunity to insert additional argument. Non-compliance defeats the purpose of the rules.

[13] The negligence *per se* argument, taken alone, amounts to one paragraph of five sentences with no supporting case authority whatsoever. (*See* Appellant's Brief, at 11).

- 11 -

The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a).

We could find a waiver of Appellant's claims for failure to comply with Rule 2119. However, in the interest of judicial economy, we will address the claims on their merits. In any event, we disagree with both assertions. Neither of Appellant's negligence claims merit relief.

"Initially, we note, a trial court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law." **Commonwealth v. Flaherty**, 89 A.3d 286, 288 (Pa. Super. 2014) (citation and internal quotation marks omitted). This Court has reviewed code provisions similarly. **See Commonwealth v. Williams**, 941 A.2d 14, 21 (Pa. Super. 2008). "As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary." **In re Wilson***,* 879 A.2d 199, 214 (Pa. Super. 2005) (*en banc* ) (citations omitted).

Generally, to prevail in a negligence case, a plaintiff must demonstrate the following elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff. . . .

The concept of negligence *per se* establishes the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation designed to prevent

a public harm. However, a plaintiff, having proven negligence *per se* cannot recover unless it can be proven that such negligence was the proximate cause of the injury suffered.

We have defined negligence *per se* in the following fashion:

> [Negligence *per se* is] conduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances. Pennsylvania recognizes that a violation of a statute or ordinance may serve as the basis for negligence *per se*. However, a court will not use a statute or regulation as the basis of negligence *per se* where the purpose of the statute is to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public.

In order to prove a claim based on negligence *per se*, the following four requirements must be met:

> (1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;
>
> (2) The statute or regulation must clearly apply to the conduct of the defendant;
>
> (3) The defendant must violate the statute or regulation;
>
> (4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

***Schemberg v. Smicherko***, 85 A.3d 1071, 1073-74 (Pa. Super. 2014) (citation omitted).

Here, Appellant utterly fails to develop an argument that demonstrates the four elements of common law negligence (duty, breach, causation, and loss). (**See** Appellant's Brief, at 10-11). Instead, he baldly asserts the trial

court erred by not finding that Appellee Palladino had a duty to advise him "that he could lose his money if the deal fell through." (*Id.* at 11).

Appellant points to nothing in the record which references this claim. Nor, for that matter, does he establish that he did not know this fairly obvious conclusion already. In any event, for authority, Appellant cites to *Gorman v. Costello*, 929 A.2d 1208, 1212-13 (Pa. Super. 2007). (*See id.* at 10). His reliance is misplaced. *Gorman* involved the propriety of an incomplete jury instruction, not at issue in this appeal from a bench trial, on the factual cause of injuries claimed to have occurred in a motor vehicle accident (as opposed to a pre-existing degenerative spinal condition).[14] *See id.* at 1213.

Here, Appellant's argument fails to establish negligence or that his case authority on personal injury causation applies. His first claim does not merit relief.

---

[14] The only other case cited by Appellant as authority is *Reilly v. Tiergarten Inc.*, 633 A.2d 208 (Pa. Super. 1993), *appeal denied*, 649 A.2d 675 (Pa. 1994). (*See* Appellant's Brief, at 10). *Reilly* decided in pertinent part that the appellant had not established a cause of action in negligence against bar owners who had served him, a minor, in violation of the Dram Shop Act, because his subsequent assault on his father and police was too remote to be foreseeable. *See id.* at 210. While *Reilly* accurately recites the traditional four elements of negligence, Appellant never shows that the four elements exist here, nor does he develop an argument beyond the recitation of the formula. (*See id.*; *see also* Appellant's Brief, at 10). *Reilly*'s application to the instant appeal beyond that recitation is too tenuous to merit further discussion.

Similarly, Appellant fails to develop any pertinent argument that Appellee Palladino was negligent *per se*. (**See** Appellant's Brief, at 11). Appellant offers no case authority at all in support of his claim that the administrative code provisions pertaining to escrow of funds received are controlling. Instead, he relies exclusively on the mere bald assertion that Ms. Palladino had a code-based duty to hold the deposit in escrow, and that duty was non-waivable. (**See id.**; **see also** 49 PA ADC § 35.321 (duty to deposit funds **received** into escrow); 49 PA ADC § 35.322 (duty to escrow funds in sub-section 321 is non-waivable).

Appellant argues that Appellee Palladino was negligent *per se* because she purportedly violated section 35.321 of the Pennsylvania Administrative Code (duty to deposit money belonging to another into escrow account),[15]

_____

[15] **Duty to deposit money belonging to another into escrow account.**

    (a) Except as provided in subsection (b) [excluding receipt of rents as a property manager], a broker shall deposit **money that the broker receives belonging to another into an escrow account** in a Federally or State-insured bank or depository to be held pending consummation of the transaction or a prior termination thereof that does not involve a dispute between the parties to the transaction, at which time the broker shall pay over the full amount to the party entitled to receive it. If a broker is a partnership, association or corporation, its broker of record shall be responsible for ensuring that the escrow duty is performed.

49 PA ADC § 35.321.

which is made non-waivable by sub-section 322.[16] (**See** Appellant's Brief, at 12).

However, Appellant fails to establish that this duty to escrow funds received applies when funds are **not** received by the broker or real estate agent. Impugning Ms. Palladino for "allow[ing] a check . . . to be made out to the builder," and labeling the transaction a "sneaky shell game" is not proper (or persuasive) legal argument, and does not excuse the failure to develop a proper legal argument supported by pertinent citation to authority. (**Id.** at 9); **see also** Pa.R.A.P. 2119(a), (b).

To the contrary, on independent review, we agree with the trial court that Appellant, a practicing engineer with a college degree in engineering (who apparently made copious notes on the original documents, suggesting he was knowledgeable and diligent about what he read and was asked to sign),[17] was able to understand what he read and signed. (**See** Trial Ct. Op., at 4, 21). The trial court found that Appellant's claim, that he did not

---

[16] **35.322. Nonwaiver of escrow duty.**

A broker's escrow duty may not be waived or altered by an agreement between the parties to the transaction, between the broker and the parties, or between the broker and other brokers who may be involved in the transaction.

49 PA ADC § 35.322.

[17] (**See** Trial Ct. Op., at 10).

- 16 -

read or understand Miscellaneous Provision No. 1, was not credible. (**See id.**, at 21). We defer to the credibility findings of the trial court. **See Kornfeld**, **supra** at 173.

Appellant is charged with knowledge of the terms he read, agreed to, and signed. Accordingly, on independent review of the record, we agree with the trial court that Appellant made a knowing decision to waive his rights to place the money in escrow (or to walk away from the deal altogether), by complying with the Agreement of Sale requirement to deposit the money directly with the builder for the construction of his house. (**See** Trial Ct. Op., at 6). The trial court apparently accepted Appellee Palladino's testimony that she (correctly) informed Appellant if he did not provide the deposit directly to the builder, the builder would not build the house for him. (**See id.** at 10). Appellee Palladino duly disclosed accurate information. This is not negligence *per se*.

We also agree with the trial court's conclusion that the cited escrow provisions on which Appellant relies only apply if funds are entrusted to the real estate agent. (**See** Trial Ct. Op., at 6-7, 22-23). Where, as here, the buyer agrees to pay the deposit directly to the builder, the real estate agent has not received funds. Appellee Palladino was not obliged to escrow funds she never received. Appellant offers no pertinent authority to the contrary. Appellant's first claim does not merit relief.

In his second claim, Appellant assigns error to the trial court for not concluding that Appellee Palladino was negligent *per se* for breaching a fiduciary duty. (*See* Appellant's Brief, at 2-3). Again, Appellant asserts, but fails to develop, an argument in support of his claim with pertinent discussion and citation to authority. (*See id.* at 12-14); *see also* Pa.R.A.P. 2119(a), (b). For the claim of fiduciary duty, Appellant cites only one case, *Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. 2000), involving tax preparation. (*See* Appellant's Brief, at 13). Notably, *Basile* concluded on the facts presented that a fiduciary duty did **not** exist. *See Basile*, *supra* at 1121 (holding as matter of law that tax preparer which provided, as one of three refund options, tax refund anticipation loan through independent bank, was not acting as appellees' agent and not subject to heightened fiduciary duty).

Additionally, Appellant baldy asserts that Appellee Palladino's prior course of dealing with one of CLM's principals (Fischer) created a conflict of interest. (*See* Appellant's Brief, at 13). Appellant develops no argument in support of the claim that the mere history of prior business relationships establishes a conflict of interest, or any citation to authority whatsoever to buttress this assertion. (*See id.*). Nor does he establish any conflict of interest in the specific property at issue. Appellant's conflict of interest argument is waived and would merit no relief.

Appellant's remaining arguments (*e.g.*, Appellee Palladino's breach of duty by failure to disclose her part-ownership interest in Keller Williams' in-house title/settlement company) are undeveloped and unsupported by any controlling authority. Appellant's second claim is waived for this reason as well. *See* Pa.R.A.P. 2119(a), (b).

Moreover, it would merit no relief. Appellant's claim that Appellee Palladino somehow breached a fiduciary duty because there were liens on the property fails on its underlying premise. It disregards the evidence of record that similar if not identical liens on the adjacent Calabrese property were all satisfied or removed by closing. Furthermore, Appellant fails to show that the existence of liens (and their timely satisfaction) is not common in real estate practice.

Additionally, under **Basile**, **supra**, cited with approval by Appellant, mere incidental benefit from an interest in a related transaction does not establish a fiduciary duty:

> The special relationship arising from an agency agreement, with its concomitant heightened duty, cannot arise from any and all actions, no matter how trivial, arguably undertaken on another's behalf. . . . Nothing prevented appellees from questioning [appellant's] employees regarding the basis for the costs of the [tax refund anticipation loan] and whether [appellant] benefited from the financing service. If [appellant's] response did not satisfy appellees, they were free to take their business elsewhere. That is the essence of our market economy.

**Basile**, **supra** at 1121-22.

Here, Appellant cannot conjure up a fiduciary duty by scattershot references to a variety of situations or historical conditions, such as prior dealings with one of the builders, or incidental ownership in an in-house title company, utterly fail to establish how any of them impact the issues on appeal, and **none** of which are supported by controlling authority, then *ipso facto* prove a breach of duty or negligence *per se*.

We observe that at trial, Appellant repeatedly responded to all questions about his course of dealing with Appellee Palladino and CLM Builders by asserting that he relied exclusively on his agent. (**See e.g.**, N.T. Trial, at 227 ("I used to deal only with my agent, Mrs. Palladino.")). However, after extensive questioning on cross-examination, Appellant conceded that he never asked Appellee Palladino for a return of his deposit:

Q. When did you go to Janet [Palladino] and say, tell me how I get my money back?

A. I did not ask her at all.

(**Id.** at 228).

Also, Appellant signed an acknowledgement of notice that if he wanted legal, accounting or other advice he should consult with a lawyer, accountant, or other professional. (**See** Plaintiff's Exhibit No. 1). It is undisputed that Appellant chose not to do so until after the fact. The lawyer he did retain testified that he would have given Appellant essentially the same advice that Appellee Palladino gave him, *viz.*, he had to make a

J-A16012-15

decision whether to pay the builder directly, or do something else. (***See*** N.T Trial, at 109). Appellant's second claim, even if not waived, would not merit relief.

Appellant's third claim is that there was an ambiguity between the Keller Williams' contract and the Agreement of Sale. (***See*** Appellant's Brief, at 4). Appellant argues that the trial court erred by failing to address the ambiguities between the agreement of sale and "the dual agency contract." (***Id.*** at 15). We disagree.

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. **When a writing is clear and unequivocal, its meaning must be determined by its contents alone.**
>
> Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

***Murphy v. Duquesne Univ. of the Holy Ghost***, 777 A.2d 418, 429-30 (Pa. 2001) (citations and quotation marks omitted) (emphasis added).

Here, after careful review, we conclude that there is no ambiguity in the meaning of the provision at issue. Appellant candidly concedes that when the words of a written contract are clear and unambiguous the intent is to be derived only from the express language of the agreement, citing *In re Breyer's Estate*, 379 A.2d 1305, 1309 (Pa. 1977).[18] (*See* Appellant's Brief, at 14).

Nevertheless, he seeks to undermine the inevitable result of this plain meaning rule by reference to various learned treatises, obviously intended to raise doubts about the application of the rule. However, on careful reading, it is apparent that none of the textbook citations undermine the general principle.[19] (*See id.*). Instead, the quotations from the commentators do little more than suggest that words should be read in the context of surrounding circumstances, and the rule should not be applied inflexibly.

_____

[18] For clarity, the exact quote is reproduced here:

> When the parties to an agreement reduce their understanding to a writing which uses clear and unambiguous terms, a court need look no further than [the] writing itself when asked to give effect to that understanding.

*In re Breyer's Estate*, 379 A.2d 1305, 1309 (Pa. 1977) (citations omitted).

[19] We note that Appellant claims "**[t]his Court**, **too, has cautioned** about the dangers of focusing only upon the words . . . ." but then cites to a treatise on evidence quoted in Corbin on Contracts. (Appellant's Brief, at 14) (emphasis added).

In any event, Appellant offers no controlling authority to support his supposition that one document, unambiguous on its face, can become ambiguous under Pennsylvania law by reference to a second document, to which one of the signatories is not even a party.

To the contrary, "[o]nly where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties." **Murphy**, **supra** at 429. "When a writing is clear and unequivocal, its meaning must be determined **by its contents alone**." **Id.** (citation omitted) (emphasis added).

Here, after independent review, we conclude that the meaning of the text at issue could not be clearer. Seller insisted in its agreement, and Appellant as Buyer agreed, to pay his deposit directly to Seller, for the construction of his house. The trial court viewed this claim of ambiguity as "[n]onsensical." (Trial Ct. Op., at 20). We conclude it is legally frivolous. Appellant's third claim fails.

In Appellant's fourth and final question, he challenges the trial court's "disregard" of evidence, namely, the opinion report provided by his expert witness. (Appellant's Brief, at 5). Appellant argues, in effect, that the trial court erred by not accepting the opinion of his expert. (**See id.**). He maintains that the trial court incorrectly accepted Appellees' argument that the "Real Estate Licensing and Registration Act," (also referred to as RELRA), 63 Pa.C.S.A. §§ 455.101 − 455.902, applied. We disagree.

Our standard of review is well-settled.

> It is well established in this Commonwealth that the decision to admit or to exclude evidence, **including expert testimony**, lies within the sound discretion of the trial court. Moreover, our standard of review is very narrow; we may only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Ettinger v. Triangle-Pac. Corp.*, 799 A.2d 95, 110 (Pa. Super. 2002), *appeal denied*, 815 A.2d 1042 (Pa. 2003) (citation and quotation marks omitted) (emphasis added).

Appellant appears to claim that the trial judge should have accepted the interpretation of his expert, Mr. Altopiedi, of what constitutes the controlling law. (*See* Appellant's Brief, at 15). In another considerably abbreviated argument, consisting of five sentences in less than half a page, Appellant claims that his expert's conclusions were "credible and correct." (*Id.*). We disagree.

Appellant's claim, in effect, disregards our standard of review for the admission of expert testimony, which requires "a showing that the trial court clearly abused its discretion or committed an error of law." *Ettinger*, *supra* at 110. Furthermore, it is well settled that in a non-jury trial, the trial judge has the dual function of making rulings of law, and weighing the evidence as fact-finder. *See* Pa.R.C.P. 1038; *see also Kornfeld*, *supra* at 173.

Preliminarily, we note that Appellant raises one question (purported disregard of his expert's opinion), and argues another (trial court treatment

of Attorney Falzone as expert instead of fact witness). (***See*** Appellant's Brief, at 5, 15). In any event, Appellant's issue and argument are both undeveloped and unpersuasive.

Instead, Appellant argues, in effect, that the trial court erred because it should have accepted the conclusions of his expert. (***See id.*** at 15). To prove this claim, Appellant had to establish by proper development of an argument with citation to pertinent authority that this conclusion was legally correct. He utterly fails to do so.

Rather, he postulates, without pertinent authority, that the trial court improperly noted that Attorney Falzone's testimony (that he regularly held funds in escrow for clients) conflicted with Mr. Altopiedi's conclusion that "it is a clear breach of fiduciary duty for a broker to allow deposit money to go to a third party[.]" (Trial Ct. Op. at 22; ***see also*** Appellant's Brief, at 15). Appellant fails to develop or support an argument of trial court error. His claim is waived.

Moreover, it would not merit relief. Appellant recognizes that "[w]hen two experts provide conflicting testimony, the trier of fact may discredit them both." (Appellant's Brief, at 15). For authority, Appellant cites ***Mudano v. Philadelphia Rapid Transit Co.***, 137 A. 104 (Pa. 1927). (***See*** Appellant's Brief, at 15). Inexplicably, Appellant then premises his argument on the acknowledgement that here the trial court **followed** this principle. (***See id.***) ("The trial court in this matter did exactly that.").

Appellant appears to posit that the trial court should have deferred to Mr. Altopiedi's interpretation. (*See id.*). However, Appellant fails to develop an argument that the trial court was in error, beyond the self-serving but otherwise unsupported assertion that his expert "was credible and correct." (*Id.*). On independent review, we conclude that the trial court correctly decided that the deposit of funds with a party other than the broker is expressly permitted under 63 Pa.C.S.A. § 455.608e(k).[20]

In this case, the parties to the agreement of sale agreed in writing to have the deposit paid to the builder. There is no dispute that Appellee Palladino, a witness but not a party to the agreement of sale, correctly informed Appellant that he could not purchase the house he wanted without compliance. Her advice was truthful, and by all accounts, accurate. It was, in essence, the same advice his own lawyer later testified that he would have given, had he been retained before the fact. (*See* N.T. Trial, at 108-

---

[20] Sub-section (k) provides:

> This section does not preclude the parties to a transaction from agreeing in writing or electronic form to have deposits or other escrows held by a person other than the brokers who represent the parties. This subsection shall not be construed to allow an associate broker, salesperson or qualified association to hold deposits or other escrows.

63 P.S. § 455.608e(k).

09). Nevertheless, Appellant chose to comply. Appellee Palladino did not receive any funds to be escrowed.

Appellant argues that his expert's opinion should have been adopted by the trial court, but he offers no persuasive argument in support of the proposition that sub-section (k) does not apply. We conclude it does.

Our review of legal questions is *de novo* and plenary. **See Flaherty**, **supra** at 288; **Williams**, **supra** at 21; **In re Wilson, supra** at 214. We conclude that none of the statutory or administrative code interpretations proposed by Appellant show error by the trial court in its conclusion that Appellant waived his right to escrow and knowingly acceded to the builder's direct deposit requirement to obtain the house he particularly wanted.

Although our reasoning differs somewhat from that of the trial court, we may affirm on any basis provided that the court's decision is legally correct. **See Prieto Corp. v. Gambone Const. Co.**, 100 A.3d 602, 606 (Pa. Super. 2014).

Judgment affirmed.

Judge Lazarus joins the Memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/20/2015