J-A11005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: MARY KOCIS, AN INCAPACITATED PERSON, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: EVELYN KOCIS AND ELIZABETH KOCIS | |
| | No. 2744 EDA 2015 |

Appeal from the Order Entered August 3, 2015
In the Court of Common Pleas of Lehigh County
Orphans' Court at No(s): 2012-0258

BEFORE: SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.: **FILED JUNE 29, 2016**

Appellants, Evelyn Kocis and Elizabeth Kocis (collectively "the Sisters"), appeal from the order entered on August 3, 2015, in the Lehigh County Court of Common Pleas. We affirm.

The relevant facts of this case were set forth by the orphans' court as follows:

> Mary Kocis ("Mary") was adjudicated incapacitated pursuant to 20 Pa.C.S.A. § 5511 in July, 2012, at the age of 78 years. Her sisters, Evelyn Kocis and Elizabeth Kocis, ("the [S]isters") appeal from the court's order dated July 31, 2015, and filed of record on August 3, 2015, which denied their exceptions to three separate orders dated April 15, 2015, all of which granted different portions of a petition to access or

---

[*] Former Justice specially assigned to the Superior Court.

partition joint funds for the payment of Mary's care, and an order dated April 20, 2015, which found Elizabeth Kocis in contempt and imposed sanctions therefor.

* * *

At the time the §5511 petition was filed, on February 15, 2012, the residential care facility in which Mary had resided since April 30, 2011, had not received consistent payment for its residential services to Mary since her admission. Its outstanding bill at that time was in excess of $50,000.00.

The hearing on the §5511 petition was continued from April 2, to May 14, 2012, at the [S]isters' request to allow them sufficient time to retain legal counsel. They had resided in the community with Mary prior to Mary's admission to her residential care facility. No counsel entered an appearance prior to the scheduled §5511 hearing, and the [S]isters filed a written answer, by fax, to the Clerk of the Orphans' Court on May 11, 2012, which contained no indication they were represented by counsel. Nevertheless, on May 12, 2012, Jeffrey Gilbert, Esquire appeared on their behalf and requested the §5511 hearing be continued so that the [S]isters could arrange for an independent medical examination ("IME") of Mary. That request was granted by order dated, May 25, 2012, and the §5511 hearing was continued to June 25, 2012. Elizabeth Kocis was appointed Emergency Guardian of the Person authorized to arrange for an IME of Mary and was directed to make herself available to the nursing home and cooperate with the Emergency Guardian of the Estate, Laurie Schnaufer, "...including but not limited to providing such financial information or access to the assets of Mary Kocis as the Emergency Guardian of the Estate may request."

By letter report filed on June 25, 2012, the Emergency Guardian of the Estate represented that, despite the language contained in the May 25, 201[2], Order, Elizabeth Kocis was not reachable by the facility to make a medical decision on Mary's behalf on at least one occasion. It also represented the [S]isters' finances were enmeshed with Mary's finances and they were unable/unwilling to provide the information and records that would enable the Emergency Guardian of the Estate to attempt to determine Mary's ownership interest in jointly owned property so as to qualify her for Medical Assistance benefits to which she

was likely entitled. Based upon this report and the testimony at the June 25 hearing, at which the [S]isters were represented by Attorney Gilbert and did not offer testimony regarding an IME of Mary, Mary was found to be incapacitated and in need of plenary guardianship services. Elizabeth was appointed Plenary Guardian of Mary's person but not of her estate. Rather, Steven A. Litz, Esquire, an experienced attorney who serves as guardian of the estate of several other wards of the court, was appointed Guardian of Mary's estate.

The Final Decree, dated July 2, 201[2], contained the following express direction to Elizabeth as Guardian of the Person:

> ...the Guardian of the Person is directed to cooperate in all respects with the Guardian of the Estate and with all providers of residential and medical services to Mary Kocis. The Guardian of the Person shall promptly provide all documentation, records, and information as shall be requested by the Guardian of the Estate, and shall complete a *Guardian's Information Sheet* and file it...within 5 business days of service of this Decree. The Guardian of the Person shall be available to be contacted at all times by the providers of health and residential services to Mary Kocis.

Attorney Gilbert withdrew his appearance on behalf of the [S]isters by praecipe filed on August 3, 2012.

Since his appointment as Guardian of the Estate, Attorney Litz has spent much time and effort attempting to qualify Mary for medical assistance. He promptly marshalled and utilized Mary's solely owned assets for her care and maintenance. However, the bulk of Mary's estate is comprised of her ownership interest in bank accounts and savings bonds owned jointly with the [S]isters. Until Mary's ownership interest in that jointly owned property is determined, Mary has no assets with which to pay for her care, and cannot qualify for Medical Assistance ("M.A.") benefits to which she is entitled. This has not yet been accomplished because [] the [S]isters have been unwilling to provide all of the records/information about property jointly held by the [S]isters and Mary.

Because of the lack of cooperation from the [S]isters, the M.A. application filed by the Guardian of the Estate was denied for want of explanation about Mary's jointly owned assets. Attorney Litz was compelled to file an appeal from the denial of M.A. benefits. In April, 2014, the Lehigh County Assistance Office, ("LCAO") issued a list delineating the information that it required to reconsider its denial of M.A. benefits. Though Evelyn did participate with Attorney Litz in reaching an agreement whereby the LCAO extended the deadline to October 27, 2014 for submission of the necessary documentation to LCAO, the [S]isters did not supply the delineated items to the Guardian of the Estate. On September 26, 2014, Attorney Litz filed a report that set forth the steps he had taken to supply the necessary information to LCAO and the lack, of cooperation/compliance from the [S]isters. Based upon that report, an Order dated September 29, 2014, was entered that directed the [S]isters provide the information and documentation required by the LCAO to Attorney Litz within 20 days. The September 29, 2014, Order contained the following language in bold print: "**failure to comply with this direction may result in the imposition of sanctions.**" The [S]isters did not appeal or file exceptions to the September 29, 2014, Order; neither did they comply with it.

The Guardian of the Estate nevertheless allowed the [S]isters an additional four months to provide the necessary information/documentation; even meeting personally with Elizabeth and speaking on the telephone with Evelyn in early February 2015. These additional efforts and courtesies proved fruitless as is set forth in the Guardian of the Estate's second report filed on February 18, 2015. On February 25, 2015, the residential care facility, whose unpaid bill for services rendered then exceeded $300,000, filed a partition petition. A rule to show cause was issued on March 2, 2015, that clearly and unambiguously informed the [S]isters of the relief requested and the consequence of failing to file a written answer or other responsive pleading by a date certain:

IT IS ORDERED, pursuant to Leh. O.C. Rule 3.5-1(d), that a Rule be, and hereby is, issued upon:

- Elizabeth Kocis, individually and as Guardian of the Person of Mary Kocis, and;

- Evelyn Kocis; and,

- Steven A. Li[t]z, Esquire, Guardian of the Estate of Mary Kocis, to show cause, if any there be why:

1. All accounts/assets /investments titled in the joint names of Mary Kocis and/or Elizabeth Kocis and/or Evelyn Kocis as of November 1, 2014, should not be partitioned into as many shares as there are named joint owners and the fractional share of Mary Kocis be accessed and utilized by Steven A. Litz, Esquire, Guardian of the Estate of Mary Kocis to pay for the care and maintenance of his ward[1] and,

> [1] The current unpaid balance for residential services provided to Mary Kocis at Phoebe Home is reported to be in excess of $300,000.00.

2. Elizabeth Kocis should not be removed as Guardian of the Person of Mary Kocis for her failure/refusal to cooperate with and provide necessary documentation to the Guardian of the Estate as requested by him and as directed by Order of this Court, and her failure to file annual reports as directed by Decree dated, July 2, 2012; and,

3. Elizabeth Kocis and Evelyn Kocis should not be found in contempt of this Court's Order dated, September 29, 2014 and be subject to the immediate imposition of sanctions, including but not limited to:

> a. Payment of legal and guardianship fees incurred by the Guardian of the Estate and by the residential care provider in connection with their efforts to determine Mary Kocis' interest in jointly owned assets and to obtain access thereto to pay for the cost of the care and maintenance provided to Mary Kocis since April 30, 2011; and/or
>
> b. Payment of a daily fine in an amount not less than $50/day; and/or,

- 5 -

c. Incarceration in Lehigh County Prison.

NOTICE IS HEREBY GIVEN THAT:

- ANY OF THE ABOVE-NAMED PERSONS WHO IS OPPOSED TO THE GRANTING OF THE PETITION FOR RULE TO SHOW CAUSE, AND TO THE GRANTING OF THE RELIEF AND IMPOSITION OF SANCTIONS AS SET FORTH ABOVE AT NUMBERS 1-4 OF THIS RULE RETURNABLE, MUST FILE A WRITTEN ANSWER OR OTHER RESPONSIVE PLEADING WITH THE CLERK OF THE ORPHANS' COURT DIVISION OF LEHIGH COUNTY, PENNSYLVANIA, LEHIGH COUNTY COURTHOUSE, 455 WEST HAMILTON STREET, ALLENTOWN, PENNSYLVANIA, ON OR BEFORE APRIL 1, 2015.

- FAILURE TO TIMELY FILE A WRITTEN ANSWER OR OTHER RESPONSIVE PLEADING WILL OPERATE AS AN ADMISSION OF ALL AVERMENTS IN THE PETITION FOR RULE TO SHOW CAUSE AND MAY RESULT IN THE ENTRY OF AN ORDER GRANTING SAID PETITION AND DIRECTING THE RELIEF AND/OR/IMPOSING SOME OR ALL OF THE SANCTIONS SET FORTH AT NUMBERS 1-4 OF THIS RULE TO SHOW CAUSE, WITHOUT FURTHER NOTICE.

The [S]isters did not timely file an answer or other responsive pleading to the rule. On Friday, March 27, 2015, Evelyn faxed a letter to the Clerk of the Orphans' Court that requested an extension of the April 1, 2015, deadline. Because she had not served counsel for petitioner with a copy, the Clerk did so. Her request for an extension of time to reply to the rule, that had been issued on March 2, 2015, was opposed. By order issued on March 31, 2015, Evelyn was given until April 16, 2015,[2] to respond to the issue of her contempt and imposition of sanctions therefor. **The request to extend the April 1, 2015 deadline regarding all other issues was denied.** Since no responsive pleadings were filed by April 1, 2015, the averments

in the partition petition were deemed admitted pursuant to Leh. O.C. Rule 3.5-1(d). Accordingly, three separate orders were issued on April 15, 2015. The first removed Elizabeth as Guardian of the Person; the second found that Mary had a 50% ownership interest in all accounts titled in her name and the name of one of her sisters, and directed the financial institutions to distribute one-half of the balance of such joint accounts to the Guardian of the Estate; and the third found that certain US Series E Bonds in Mary's name and social security number, that also had the name of one of her sisters, were owned 100% by Mary Kocis and directed the [S]isters to deliver them to the Guardian of the Estate within 15 days of the Order. Thereafter, by order dated April 20, 2015, Elizabeth was found in contempt of the September 29, 2015, order, and, as a sanction, directed she pay one-half of the legal fees of petitioner and one-half of the guardianship fees of the Guardian of the Estate attributable to his efforts to obtain necessary financial information. Though Evelyn did not file an answer to the contempt/sanction issue by the extended deadline of April 20, 2015, no Order was entered on that issue in light of the *Exceptions* filed on May 5, 2015 to all 4 of the April, 2015 Orders.

[2] Subsequently verbally extended to April 20, 2015.

Each of the four April, 2015, orders resulted from the consistent refusal of the [S]isters to provide information necessary to qualify Mary for the public benefit to which she is entitled. They did not cooperate with the Guardian of the Estate, the LCAO or the residential care facility that has been providing care to Mary for more than 4 years. For most of this guardianship administration they chose not to be represented by counsel, and have ignored filing deadlines and direct orders of this Court. That they are elderly and professedly unaware of the legal consequences of their decision to handle this matter as they see fit, does not make them immune from those consequences. Had they properly appealed the September 29, 2014, order, or properly and timely answered the partition petition, or filed a petition for review hearing if they believed Attorney Litz was not properly discharging his duties as Guardian of the Estate, a hearing would have been appropriate. They did none of those things, and argue instead there is no basis for the court's orders that:

- 7 -

- determined the ownership interests in the jointly owned property;

- directed them to turn over to Mary's duly appointed Guardian of the Estate the assets determined to be owned by Mary; and,

- removed Elizabeth from the fiduciary position of guardian of the person,

because the Court failed to conduct a hearing. There was no hearing because the [S]isters, in effect, had admitted all the averments in the partition petition. The removal of Elizabeth as Guardian of the Person was based upon her failure to file any annual reports, or to follow any of the orders of the court that directed her to cooperate with the Guardian of the Estate and provide records/information necessary to access the public benefit to which Mary Kocis is entitled.

Orphans' Court Opinion, 10/28/15, at 1-7 (emphases in original). The orphans' court entered an order denying the Sisters' exceptions and directing that the four April 2015 orders remained in effect. Order, 8/3/15. This appeal followed.

On appeal, the Sisters raise the following issues:

A. The record created before the Orphans' Court did not support the Orphans' Court's 50% / 50% division of the joint accounts of Mary, Elizabeth, and Evelyn Kocis.

B. The record did not support the Orphans' Court's finding that Mary Kocis owned 100% of the U.S. Series I savings bonds jointly titled in her name and the name of Elizabeth or Evelyn Kocis.

C. The record did not support the Orphans' Court's finding that Elizabeth Kocis was in contempt of its Order of September 29, 2014.

D. The record did not support the Orphans' Court's decision to remove Elizabeth as the guardian of Mary Kocis' person.

The Sisters' Brief at 5. We shall address these issues in the order in which they were presented.

In their first claim of error, the Sisters argue that the orphans' court erred in dividing joint accounts. The ownership of joint accounts is defined under 20 Pa.C.S. § 6303(a). Thus, because this question concerns the application of a statute, we are presented with a question of law; our standard of review is *de novo* and the appellate scope of review is plenary. *Ramalingam v. Keller Williams Realty Group*, 121 A.3d 1034, 1042 (Pa. Super. 2015) (citations omitted).

The relevant statute provides as follows:

> **(a) Joint account.--**A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent.

20 Pa.C.S. § 6303(a).

The Sisters argue that "there is no evidence in the record probative of the proportion of the net contributions of Mary, Elizabeth, and Evelyn to the joint accounts." The Sisters' Brief at 16. The Sisters aver that this lack of evidence prohibited the orphans' court from making any findings and apportioning the ownership interests in the joint accounts. *Id*. at 16-17. We disagree.

The Comment to 20 Pa.C.S. § 6303 is instructive on this issue:

> The section contains no provision dealing with division of the account when the parties fail to prove net contributions. The

- 9 -

omission is deliberate. Probably, **a court would divide the account equally among the parties to the extent that net contributions cannot be proven**; but a statutory section explicitly embodying the rule might undesirably narrow the possibility of proof of partial contributions and might suggest that gift tax consequences applicable to creation of a joint tenancy should attach to a joint account. The theory of these sections is that the basic relationship of the parties is that of individual ownership of values attributable to their respective deposits and withdrawals; the right of survivorship which attaches unless negated by the form of the account really is a right to the values theretofore owned by another which the survivor receives for the first time at the death of the owner. That is to say, the account operates as a valid disposition at death rather than as a present joint tenancy.

20 Pa.C.S. § 6303 (cmt.) (emphasis added).

The inability to determine individual contributions was due to the Sisters' refusal to comply with the orphans' court's directives. Accordingly, as contemplated by the comment to section 6303, the orphans' court divided the accounts equally. We discern no error of law, and the Sisters are entitled to no relief on this issue.

Next, the Sisters claim that the orphans' court committed an error of law when it found that Mary owned 100% of the U.S. Series I savings bonds that were jointly titled in Mary's name and the name of either Elizabeth or Evelyn Kocis, contrary to 31 C.F.R. § 360.20(b). The Sisters' Brief at 19. We disagree.

Similar to our discussion in the first issue, we are again faced with the application of codified law, here the Code of Federal Regulations ("C.F.R").

Thus, our standard of review is *de novo*, and our scope of review is plenary.

***Ramalingam***, 121 A.3d at 1042.

The code section that the Sisters claim is controlling provides as follows:

> (b) The Department of the Treasury will recognize a claim against an owner of a savings bond and conflicting claims of ownership of, or interest in, a bond between coowners or between the registered owner and the beneficiary, **if established by valid, judicial proceedings** specifically listed in this subpart. Escheat proceedings will not be recognized under this subpart. Section 353.23 specifies evidence required to establish the validity of judicial proceedings. Treasury may require any other evidence to establish the validity of judicial proceedings, such as evidence that the proceeding provided due process, complied with this part, and complied with relevant state law.

31 C.F.R. § 360.20(b) (emphasis added).

However, we point out that because Mary and the Sisters are living, any one of the parties named as owner or co-owner of the bonds had the authority to surrender and retain payment on the Series I bonds:

> A savings bond registered in coownership form will be paid to either coowner upon surrender with an appropriate request, and upon payment (as determined in § 360.43), the other coowner will cease to have any interest in the bond.

31 C.F.R. § 360.37.  Moreover, on each of these bonds, Mary was the owner and her sisters were relegated to the status of first co-owners because the bonds were registered under Mary's Social Security number.  31 C.F.R. § 360.2(k).

We conclude that, contrary to the Sisters' avement, the United States Treasury would recognize and accept the orphans' court's order as being from a valid judicial proceeding under 31 C.F.R. § 360.20(b). However, we need not reach the validity of the underlying judicial proceedings because we are not analyzing conflicting claims of ownership. Mary was the owner of the bonds. 31 C.F.R. § 360.37. Accordingly, Mary was entitled to obtain the full surrender value of the Series I bonds on which she was an owner pursuant to 31 C.F.R. § 360.37. Nothing in the federal regulations provides that an equal-shares apportionment is required when surrendering Series I bonds where there are co-owners. Accordingly, we cannot conclude that the trial court committed an error of law, and the Sisters' second claim of error fails.

In their third issue, the Sisters allege that the orphans' court erred when it held Elizabeth in civil contempt of the September 29, 2014 order. We conclude that this claim is meritless.

> To be punished for contempt, a party must not only have violated a court order, but that order must have been definite, clear, and specific-leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct. Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. In such cases, a contradictory order or an order whose specific terms have not been violated will not serve as the basis for a finding of contempt. To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. A person may not be held in contempt of court for failing to obey an order that is too vague or that cannot be enforced.

> When holding a person in civil contempt, the court must undertake (1) a rule to show cause; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and (5) an adjudication of contempt.
>
> Fulfillment of all five factors is not mandated, however. The essential due process requisites for a finding of civil contempt are notice and an opportunity to be heard.

*In re Contempt of Cullen*, 849 A.2d 1207, 1210-1211 (Pa. Super. 2004) (internal citation marks and quotations omitted). When reviewing an appeal from an order of civil contempt, we will not disturb the lower court's order absent an abuse of discretion. *Id*.

The September 29, 2014 order directed Elizabeth to deliver to Attorney Litz the information and documents required by the Department of Public Welfare, and as noted above, clearly informed Elizabeth that failure to comply may result in sanctions. Order, 9/29/14, at 1. Despite this warning, Elizabeth took no action. In an order filed on April 20, 2015, the orphans' court held her in contempt. On May 5, 2015, Elizabeth filed exceptions to the orders, including the finding of contempt. On May 18, 2015, the orphans' court issued a rule to show cause as to why she should not be held in contempt. Eight days later, Elizabeth filed her response to the rule to show cause. In the order filed on August 3, 2015, the orphans' court confirmed its order holding Elizabeth in contempt.

On appeal, the Sisters argue that the orphans' court failed to follow the proper procedure for a finding of civil contempt and that Elizabeth had

no intent to violate the court order. The Sisters' Brief at 24-25. We disagree.

First, we note that Elizabeth's intent was established through her numerous failures to comply even minimally with the court's orders despite repeated opportunities and directions to do so; *i.e.*, she evidenced a clear intent not to comply. With respect to the court's failure to hold a formal contempt hearing, we reiterate that a hearing is not required. Rather, as set forth above, the essential due process requisites for a finding of civil contempt are notice and an opportunity to be heard. *Cullen*, 849 A.2d at 1211. Here, Elizabeth had notice of the original order, the order directing her to comply with the original order or face sanctions, and the order initially finding her in contempt. Elizabeth's failure to respond to the petition resulted in the claims made in the February 24, 2015 petition being deemed admitted.[1] Moreover, the orphans' court issued a rule to show cause as to why she should not be held in contempt, thus providing her with the opportunity to be heard.[2] These factors result in an ample evidentiary

---

[1] The petition alleged, *inter alia*, that the Sisters should be held in contempt as they had failed to comply with the orphans' court's orders, failed to cooperate with Attorney Litz, failed to provide documents regarding Mary's assets, caused Mary to be denied medical assistance, and that Elizabeth should be removed as guardian. Petition, 2/24/15.

[2] *See North Penn Consumer Discount Co. v. Shultz*, 378 A.2d 1275, 1278 (Pa. Super. 1977) (noting that an opportunity to be heard does not always require a hearing, and that other procedural means, such as the
*(Footnote Continued Next Page)*

- 14 -

record upon which the orphans' court held her in contempt. While the procedures followed in this case do not strictly follow the processes for a finding of civil contempt, we are satisfied that the essential requirements, in fact, were met. *Cullen*, 849 A.2d at 1211. Accordingly, we discern no abuse of discretion.

Finally, the Sisters claim that there were insufficient grounds for Elizabeth's removal, and because the court failed to hold a hearing, her removal constituted reversible error pursuant to *In re Estate of Velott*, 529 A.2d 525 (Pa. Super. 1987). The Sisters' Brief at 27-28. We conclude that no relief is due.

"The power of the orphans' court to remove a guardian is an inherent right, which will not be disturbed unless there is a gross abuse of discretion." *In re Estate of Border*, 68 A.3d 946, 959 (Pa. Super. 2013). A guardian of the person is responsible for more than just health care decisions; she is responsible for all of the incapacitated person's care and custody. *Id*. at 956 (citing 20 Pa.C.S. § 5521).

The orphans' court may remove the guardian of an incapacitated person when she:

> (1) is wasting or mismanaging the estate, is or is likely to become insolvent, or has failed to perform any duty imposed by law; or

*(Footnote Continued)* —————

ability to file a petition or respond to a rule to show cause, may satisfy this requirement).

(2) Deleted. 1992, April 16, P.L. 108, No. 24, § 4, effective in 60 days.

(3) has become incapacitated to discharge the duties of his office because of sickness or physical or mental incapacity and his incapacity is likely to continue to the injury of the estate; or

(4) has removed from the Commonwealth or has ceased to have a known place of residence therein, without furnishing such security or additional security as the court shall direct; or

(4.1) has been charged with voluntary manslaughter or homicide, except homicide by vehicle, as set forth in sections 3155 (relating to persons entitled) and 3156 (relating to persons not qualified), provided that the removal shall not occur on these grounds if the charge has been dismissed, withdrawn or terminated by a verdict of not guilty; or

(5) when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office.

20 Pa.C.S. § 3182.[3] The orphans' court on its own motion may, and on the petition of any party in interest alleging adequate grounds for removal shall, order the guardian to appear and show cause why she should not be removed, or, when necessary to protect the rights of creditors or parties in interest, may summarily remove her. 20 Pa.C.S. § 3183.

The record reveals that from the earliest stages of this matter, the orphans' court was aware of the numerous jointly owned assets. Decree, 7/2/12, at 1-4. However, the orphans' court permitted Elizabeth to serve as

---

[3] While 20 Pa.C.S. § 3182 details the grounds for removal of a personal representative in a decedent's estate, it is also applicable to the removal of a guardian of an incapacitated person. 20 Pa.C.S. § 5515.

guardian, but it ordered her to produce documentation concerning Mary's jointly held assets, cooperate with Attorney Litz and promptly turn over all necessary documentation to him, cooperate with the providers of Mary's medical and residential care, and file annual reports pursuant to 20 Pa.C.S. § 5521(c)(ii).  *Id*.  Elizabeth did not comply with these directives.

While a panel of this Court in *Velott* held that a failure to hold a hearing was reversible error, we cannot conclude that the orphans' court's failure to hold a hearing on Elizabeth's removal in this matter was fatal. *Velott* is distinguishable because, here, the orphans' court had monitored this case over the course of years and had an extensive record.  Unlike *Velott*, in the case at bar, the Sisters' refusal to respond to the petition **resulted in admissions** to the claims of dereliction of duties as guardian. In other words, there was ample evidence to support Elizabeth's removal due to her failures, and by way of the rule to show cause and ability to file her own responsive pleadings, Elizabeth was provided an opportunity to be heard.  Much of the Sisters' arguments surround their desire to escape responsibility for their years of failing to comply with the orphans' court's orders.  As a reviewing Court, we cannot ignore the ramifications of the Sisters' disregard for their responsibilities because their actions and inactions jeopardized Mary's welfare.  The orphans' court did not abuse its discretion in removing Elizabeth as the guardian of Mary's person in light of the fact that she failed to cooperate with Attorney Litz, failed to comply with court's

orders, and engaged in a continued course of conduct that jeopardized Mary's well-being.  20 Pa.C.S. § 3182(5).

For the reasons set for the above, we conclude that the Sisters' are entitled to no relief.  Accordingly, the August 3, 2015 order is affirmed.

Order affirmed.

Judge Mundy joins this Memorandum.

Justice Fitzgerald Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/29/2016