J-A24009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CAROLE ANNE HENSLEY AND JOHN R. GREISIGER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| DONALD AND BERNICE A. DUVALL, AND KURFISS SOTHEBY'S INTERNATIONAL REALTY, AND GEORGE WELLS, AND JAMES FINGLETON, AND PRUDENTIAL FOX & ROACH AND MARIAN GALANTI | No. 2911 EDA 2015 |

Appeal from the Judgment Entered September 17, 2015
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 10-10374

| | |
|---|---|
| CAROLE ANNE HENSLEY AND JOHN R. GREISIGER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| DONALD AND DENISE DUVALL, AND KURFISS SOTHEBY'S INTERNATIONAL REALTY, AND GEORGE WELLS, AND JAMES FINGLETON, AND PRUDENTIAL FOX & ROACH AND MARIAN GALANTI | |
| APPEAL OF: FOX & ROACH LP D/B/A PRUDENTIAL FOX & ROACH AND MARIAN GALANTI | No. 2967 EDA 2015 |

Appeal from the Judgment Entered September 17, 2015
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 10-10374

J-A24009-16

| | |
|---|---|
| CAROLE ANNE AND JOHN R. GREISIGER HENSLEY<br><br>Appellants<br><br>v.<br><br>DONALD AND DENISE DUVALL, AND KURFISS SOTHEBY'S INTERNATIONAL REALTY, AND GEORGE WELLS, AND JAMES FINGLETON, AND PRUDENTIAL FOX & ROACH AND MARIAN GALANTI | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br>No. 3098 EDA 2015 |

Appeal from the Judgment Entered September 17, 2015
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 10-10374

| | |
|---|---|
| CAROLE ANNE AND JOHN R. GREISIGER HENSLEY<br><br><br>v.<br><br>DONALD AND BERNICE DUVALL, AND KURFISS SOTHEBY'S INTERNATIONAL REALTY, AND GEORGE WELLS, AND JAMES FINGLETON, AND PRUDENTIAL FOX & ROACH AND MARIAN GALANTI<br><br>APPEAL OF: DONALD AND DENISE DUVALL | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br>No. 3099 EDA 2015 |

Appeal from the Judgment Entered September 17, 2015
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 10-10374

BEFORE:  BOWES, OTT AND SOLANO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 13, 2017**

- 2 -

These cross-appeals were filed in an action brought by Carole Anne Hensley and John R. Greisiger (collectively the "Buyers") after they purchased real estate from Donald and Bernice A. Duvall (the "Sellers").

The Buyers instituted this action on October 7, 2010. The named defendants in the action included: 1) the Buyers' real estate agent, Fox & Roach LP d/b/a Prudential Fox & Roach and Marian Galanti (collectively "Prudential"); 2) the Sellers; and 3) the Sellers' real estate agent, Kurfiss Sotheby's International Realty, George Wells, and James Fingleton ("Sotheby's"). The Buyers averred that Prudential was negligent in representing them during the course of the real estate transaction. The Buyers also asserted claims of breach of contract, fraud in the inducement, and negligence against the Sellers, and raised a negligence count against Sotheby's. The Sellers thereafter filed a cross-claim for indemnification against Sotheby's. Sotheby's was granted summary judgment prior to trial, the Sellers were granted nonsuit during trial, and a jury returned a verdict in favor of the Buyers and against Prudential.

After careful review, we affirm the trial court's grant of a nonsuit entered at trial in favor of the Sellers, and conclude that the nonsuit rendered moot the issue of whether the trial court properly granted summary judgment in favor of Sotheby's. We also affirm the judgment entered on the jury verdict in favor of the Buyers and against Prudential, but

we remand for an award of post-judgment interest and attorney fees to the Buyers.

We first summarize the evidence presented at trial, viewed in the light most favorable to the Buyers, as the prevailing parties, against Prudential. For a number of years, the Buyers had operated a successful day care business for dogs; in 2007, they decided to expand that enterprise to include overnight kennel services. In September 2007, the Buyers and Prudential executed a Pennsylvania Exclusive Buyer Agency Contract '05. Plaintiffs' Exhibit 4a; Pennsylvania Exclusive Buyer Agency Contract '05, 9/19/07. Ms. Galanti was the Prudential employee who agreed to be the Buyers' real estate agent. In the contract, Prudential was appointed as "Buyer's Exclusive Agent for the purpose of assisting Buyer in locating acceptable real property . . . for purchase or lease." *Id*. at 1. Prudential represented that it would act on behalf of the Buyers, "as required by Pennsylvania law." *Id.* at 2. Prudential agreed to use "its professional knowledge to make a good faith effort to locate Property as described by the Buyer," and "to assist Buyer throughout the transaction," and to "act at all times in the Buyers' interest." *Id*.

The Buyers informed Ms. Galanti that they were seeking a property where they could operate an overnight dog kennel and dog day care operation. The Sellers had real estate on the market on Barndt Road in Bucks County (the "property"), that Ms. Galanti concluded would be suitable

for the Buyers' business. The property had been on the market for two years and was listed for $1.6 million. Although it was priced above what the Buyers had budgeted, they nevertheless visited it three times. They informed the Sellers' real estate agents, Mr. Fingleton and Mr. Wells, who worked for Sotheby's, of their objective to operate a day care and kennel for dogs. After inspecting the property, the Buyers specifically instructed Ms. Galanti that they intended to utilize an existing structure on the property, a barn, to house the dogs. The Buyers had no interest in the property unless the barn could serve as their kennel, and Prudential admitted that it was aware of the Buyers' desire to use the barn for that purpose. Negotiations resulted in an agreement of sale for that property in the amount of $975,000. Agreement of Sale, 3/25/08.[1]

After the agreement was drafted, the Buyers, the Sellers, and their respective real estate agents measured the property to ensure that it met the township's zoning requirements. Those mandates provided that a kennel could not be located within a 200-foot zone of the property line. According to the measurements, the barn was three feet short of the 200-foot required setback. The Buyers were informed of the measurements and that the property did not conform to the township's 200-foot zoning requirements. They expressed concern that the barn was not 200 feet or

_____

[1] The agreement was dated March 25, 2008, but executed by the Buyers on March 26, 2008, and by the Sellers on March 28, 2008.

more from the property line since their sole purpose in buying the property was to operate a kennel from the existing barn. Ms. Galanti told the Buyers not to be concerned because one of the Sellers, Mr. Duvall, was a township supervisor. Mr. Duvall thereafter represented to the Buyers that he could obtain a *de minimis* variance for the barn so that the Buyers could use the barn for their kennel. Mr. Duvall also informed the Buyers that, if he could not obtain the variance, they could satisfy the township's 200-foot set-back requirement because there were steps that extended four feet inside the barn. Mr. Duvall represented to the Buyers that they would be allowed to house the dogs beyond the four-foot stairwell, which would satisfy the 200-foot minimum.

Before executing the agreement of sale, the Buyers requested that language be placed in the document to ensure that they could use the barn as their kennel. Ms. Hensley testified that she and Mr. Greisiger told Ms. Galanti to put "a contingency in [the agreement] to make sure that when we buy this property that we can operate the kennel from the barn." N.T. Trial, 6/9/15, at 20. Ms. Hensley further stated, "I'm not a real estate agent. I didn't do the wording. I relied on [Ms. Galanti] to get the correct verbiage" so that the agreement of sale would be void if the barn could not be used as a kennel. *Id*.

Ms. Galanti inserted language in the agreement of sale that purported to ensure that it would be void if the barn could not be used as a kennel.

The language in question stated that the sale was "CONTINGENT ON TOWNSHIP AND /OR COUNTY'S APPROVAL FOR CHANGE OF USE ALLOWING BUYERS TO OPERATE A KENNEL/DOGGIE DAYCARE **FROM THE PROPERTY**. INCLUDING THE ADDING OF AN ADDITIONAL BUILDING SPACE AND /OR AN IN–LAW SUITE." Agreement of Sale, 3/25/08, at 10 (emphasis added). The language was reviewed by her supervisors. The Buyers believed that this language would render the agreement unenforceable if they could not operate their kennel from the barn. Mr. Greisiger testified that he asked Ms. Galanti specifically what the contingency clause meant, and she responded that this contingency clause meant that the agreement would be "null and void if you don't get your permit to use the barn as a kennel." N.T. Trial, 6/9/15, at 221.

After the parties measured the distance from the barn to the property line, the Buyers, the Sellers, and their respective real estate agents went to the township building and met with Greg Lippincott, the township zoning officer. Mr. Duvall told Mr. Lippincott that the Buyers were interested in purchasing his property upon the condition that they could use the barn for a kennel and day care facility for dogs. Mr. Duvall showed Mr. Lippincott drawings and measurements of the barn. Mr. Lippincott acknowledged that putting the kennel in the barn "was primarily the number one issue." N.T.Trial, 6/9/15, at 265. Mr. Lippincott represented to the Buyers that, if they kept the dogs beyond the four-foot steps, the barn could be used as a

kennel and that the barn would meet the 200 foot mandate. Mr. Lippincott also assisted the Buyers in completing a change of use zoning permit indicating that the present use of the real estate was as a barn and stable and that the proposed usage was for a kennel and a day care facility for dogs. On April 1, 2008, the Buyers received a change of use permit from West Rockhill Township, and purchased the property on May 22, 2008.

On February 24, 2009, the Buyers received a letter from Mr. Lippincott informing them that West Rockhill Township would not issue a permit for the barn to be used as a kennel. In contradiction to his earlier representations, Mr. Lippincott indicated that the Buyers could not use the barn as a kennel since it did not satisfy the 200 foot set back requirement.

The Buyers thereafter sued. At trial, they claimed that Prudential was negligent: 1) when it allowed them to buy the property without obtaining a survey to ensure that the barn satisfied the township's 200 foot setback requirement and would be permitted as a kennel; and 2) in drafting the contingency clause, which should have indicated that the purchase was contingent upon the Buyers' ability to use the barn as a kennel rather than upon the Buyers' ability operate a kennel anywhere on the property. The Buyers both testified that they would not have purchased the real estate had they known that the barn could not be used as a kennel. In support of their claim, they presented an expert witness to establish that the value of the real estate as a noncommercial property was $700,000.

Based upon this evidence, the jury found that Prudential and Ms. Galanti were seventy-five percent negligent and that the Buyers were twenty-five percent negligent. Sotheby's was granted summary judgment prior to trial, and the Sellers were granted nonsuit during trial. The jury awarded damages of $275,000. As a result of the Buyers' negligence, the verdict was molded to $206,250.92. Countervailing post-trial motions were filed and denied, and judgment was entered on the verdict on September 17, 2015. These various appeals followed.

**Appeal No. 2911 EDA 2015**

The appeal at number 2911 EDA 2015 is the Buyers' appeal from the judgment entered in their favor. They raise the following contentions:

1. Did the Trial Court err by denying Plaintiffs' post trial motion for "prevailing party" fees following a unanimous jury verdict in favor of Plaintiffs and against Defendants Prudential Fox & Roach and Marian Galanti (the "Prudential Defendants" under a "Pennsylvania Exclusive Buyer Agency Contract 05", or in the alternative, by refusing to allow Plaintiff a separate action for recovery of attorney fees as the prevailing party?

2. Did the Trial Court err by denying Plaintiffs' post trial motion for post judgment interest on the $206,250 in damages awarded by the jury in favor of Plaintiffs and against the Prudential Defendants?

3. Did the Trial Court err by finding the contingency clause "Unambiguous" precluding parol evidence, dismissing Plaintiffs' claims against the Duvall Defendants' for fraudulent inducement, negligence and breach of contract, and denying Plaintiffs' Motion for Reinstatement of the Claim and a new trial against the Duvalls?

Appellants' brief at appeal number 2911 EDA 2015 at 4-5.

The first issue concerns the following language in the exclusive Buyers' agency agreement ("Agency Contract") executed among Prudential and the Buyers: "In case of litigation or arbitration concerning this Contract, the Buyer and [Prudential] agree that costs and reasonable attorney fees shall be awarded to the prevailing party." Pennsylvania Exclusive Buyer Agency Contract '05, 9/19/02, at 2.

Herein, liability was premised upon the theory that Prudential negligently fulfilled its obligations under the Agency Contract by failing to advise the Buyers to obtain a survey before purchasing the property to make sure that the kennel could be operated from the barn[2] and in drafting an incorrect contingency clause. Specifically, Ms. Galanti composed a contingency clause, which was approved by her superiors, that did not accurately reflect the contingency desired by the Buyers. Ms. Galanti made the agreement of sale "CONTINGENT ON TOWNSHIP AND /OR COUNTY'S APPROVAL FOR CHANGE OF USE ALLOWING BUYERS TO OPERATE A KENNEL/DOGGIE DAYCARE **FROM THE PROPERTY**. INCLUDING THE ADDING OF AN ADDITIONAL BUILDING SPACE AND /OR AN IN–LAW SUITE." Agreement of Sale, 3/25/08, at 10 (emphasis added).

The Buyers' testimony, as confirmed by Mr. Lippincott, established unequivocally and absolutely that they sought to operate the kennel **from**

---

[2]  The measurement by the parties themselves was inaccurate, foreclosing the use of the barn as a kennel beyond the internal steps.

**the barn**, and would not have bought the property if the barn could not be utilized as a kennel. It was not contested that the Buyers could not operate a kennel from the barn. Under the contingency, as drafted by Prudential, the Buyers could not void the agreement of sale once they were denied a permit to house the dogs in the kennel, which was their desire from the onset.

In the Agency Contract, Prudential agreed to use "its professional knowledge to make a good faith effort to locate Property as described by the Buyer, "to assist Buyer throughout the transaction," and to "act at all times in the Buyer's interest." Pennsylvania Exclusive Buyer Agency Contract '05, 9/19/02, at 2. The jury agreed that Prudential was negligent.

The interpretation of a contract is a question of law; our standard of review is *de novo* and our scope of review is plenary. *Genaeya Corp. v. Harco Nat. Ins. Co.*, 991 A.2d 342, 346 (Pa.Super. 2010). As we reiterated in *Ramalingam v. Keller Williams Realty Grp., Inc.*, 121 A.3d 1034, 1046 (Pa.Super. 2015), the "fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties" and the parties' intent in an agreement "is to be regarded as being embodied in the writing itself." In this case, the Agency Contract clearly and unambiguously granted the prevailing party in a lawsuit concerning the Agency Contract attorney fees. The jury's liability finding was premised upon Prudential's negligent fulfillment of its contractual

obligations assumed under the Agency Contract, and the Buyers prevailed. Thus, the Buyers are entitled to prevailing party attorney fees under the terms of the accord.

Indeed, the trial court recognized its mistake in this respect and stated that it "erred in its disposition of Plaintiffs' entitlement to prevailing party attorney fees under their contract with Prudential and Galanti." Trial Court Opinion, 10/19/15, at 34. We also observe that the issue of whether any party to a lawsuit substantially prevailed is left to the trial court's discretion. *Zavatchen v. RHF Holdings, Inc.*, 907 A.2d 607, 610 (Pa.Super. 2006). We concur that, since Prudential was found 75% liable herein and the Buyers obtained a judgment of over $200,000, the Buyers prevailed in this lawsuit, and that the Buyers should have been awarded attorney fees under the contract language in question.

Prudential asserts that the Buyers did not raise a cause of action under the Agency Contract. We must disagree. The Buyers' claims concerned Prudential's representation of them during the course of the purchase of the real estate in question. Although the lawsuit sounded in negligence, the contract provided the basis for subjecting Prudential to liability. The case was submitted to the jury on the ground that Prudential was negligent in performing the duties that it assumed in the Agency Contract, which required Prudential to use its professional knowledge to make a good faith effort to locate property suitable to the Buyers, to help them throughout the

transaction, and to act in their interest. This action concerned Prudential's failure to properly perform these contractual undertakings. It did not use its professional knowledge when it drafted an incorrect contingency clause. Likewise, Prudential did not help the Buyers locate suitable property because Prudential did not have the property surveyed to make sure that the Buyers could obtain a permit to use the barn as a kennel. Finally, for the above reasons, it did not act in the Buyers' best interests. Without the contract, Prudential would have no discernable duty to the Buyers.

Prudential also takes the position that the Buyers waived any claim for attorney fees. This stance is grounded upon proceedings during a pretrial motion in *limine*. In that motion, Prudential asked that the Buyers be precluded from asking for attorney fees. The motion did not identify, address, or reference the Agency Contract. The American rule provides that the prevailing party in a negligence case cannot recover attorney fees. ***McMullen v. Kutz***, 985 A.2d 769, 612-13 (Pa. 2009) ("The general rule within this Commonwealth is that each side is responsible for the payment of its own costs and counsel fees absent bad faith or vexatious conduct. . . . This so-called 'American Rule' holds true 'unless there is express statutory authorization, a clear agreement of the parties or some other established exception.'"). The Buyers therefore assented to the grant of a motion in *limine* as to attorney fees. However, the Buyers waived their right to

attorney fees only under the American rule applicable to payment of attorney fees by the losing litigant in a lawsuit.

The Buyers were not entitled to attorney fees under the Agency Contract prior to trial. Rather, that right arose after they won at trial and obtained a verdict against Prudential based upon the contract. They promptly raised the position that they were entitled to attorney fees under the Agency Contract. Thus, we conclude that there was no waiver of entitlement to prevailing party attorney fees under the Agency Contract, and in this regard, Prudential's argument barks up the wrong tree.

In their second issue, the Buyers aver that the trial court erred in denying them post-trial interest.[3] The trial court also conceded that it erred in this respect. 42 Pa.C.S. § 8101 ("Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award."). Prudential does not respond to the position of the Buyers and the trial court that the Buyers are entitled to post-judgment interest. Hence, we remand for entry of an award of post-judgment interest herein.

_____

[3] The Buyers specifically abandoned their claim for pre-judgment interest. Appellants' brief at No. 2911 EDA 2015 at 22 (the Buyers "originally complained of the Trial Court's failure to award [their] motion for pre-judgment interest, [the Buyers] now withdraw that issue from consideration on appeal.")

Finally, the Buyers challenge the trial court's grant of a nonsuit to the Sellers.

> A nonsuit is proper only if the jury, viewing the evidence and all reasonable inferences arising from it in the light most favorable to the plaintiffs, could not reasonably conclude that the elements of the cause of action had been established. Furthermore, all conflicts in the evidence must be resolved in the plaintiff[s'] favor. In reviewing the evidence presented we must keep in mind that a jury may not be permitted to reach a verdict based on mere conjecture or speculation. We will reverse only if the trial court abused its discretion or made an error of law.

***Barnes v. Alcoa, Inc.***, 145 A.3d 730, 735 (Pa.Super. 2016).

In this case, the Buyers premised their ability to recover damages against the Sellers on the language of the contingency clause in the agreement of sale. They alleged that the Sellers breached the sales agreement since the Buyers were unable to operate their kennel from the barn. The trial court concluded that the Buyers could not obtain relief against the Sellers since the contingency clause applied only if the Buyers could not operate their kennel and day care center for dogs from the property. Since the Buyers could run a kennel on the property, just not from the barn, the court reasoned that the contingency clause was not implicated herein.

As noted above, since we are construing contract language, our standard of review is *de novo* and our scope of review is plenary. We repeat the operative language of the clause in question: The sale was "CONTINGENT ON TOWNSHIP AND /OR COUNTY'S APPROVAL FOR CHANGE

OF USE ALLOWING BUYERS TO OPERATE A KENNEL/DOGGIE DAYCARE **FROM THE PROPERTY**. . . . .”  Agreement of Sale, 3/26/08, at 10 (emphasis added).  It was not contested that the Buyers were, in fact, allowed to operate a kennel/doggie day care “from the property;” they merely were unable to use the barn for those purposes.  The trial court found that the language “from the property” was clear and unambiguous and prevented recovery against the Sellers.

On appeal, the Buyers assail the court’s finding that the contingency clause was unambiguous.  They posit that the term “from the property” was reasonably susceptible to different constructions and that “the property,” in light of the attendant circumstances, meant “the barn.”  The Buyers seek to use the discussions of the parties during the sale about the Buyers’ desire to use the barn as the kennel to interpret the term “from the property” as meaning “from the barn.”

We repeat the admonition from **Ramalingam**, **supra** at 1046, that the parties’ intent in an agreement “is to be regarded as being embodied in the writing itself.”  This Court is not permitted to either “assume that a contract's language was chosen carelessly,” or that “the parties were ignorant of the meaning of the language they employed.”  **Id**.  Accordingly, “[w]hen a writing is clear and unequivocal, its meaning must be determined by its contents alone.”  **Id**.  It is only if “a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties.”  **Id**.  Language is ambiguous solely when “it is reasonably

susceptible of different constructions and capable of being understood in more than one sense." ***Id***.

In the contract language challenged herein, the word "property" is clear and unambiguous, and means what it says: the clause is not triggered unless the Buyers could not operate a kennel on the property. However, the Buyers were allowed to maintain a kennel on the property. Only if the word "property" is construed as "barn" are the Buyers entitled to prevail. Since the term "property" is clear and unambiguous and capable of only one meaning, the Buyers correctly were prevented from presenting parol and extrinsic evidence to the effect that the term "property" actually meant "barn." Under the legal principles applicable to contract construction, the Buyers cannot utilize the conversations surrounding the purchase to change the meaning of a term that is capable of only one construction. ***Ramalingam***, ***supra***. Thus, we reject the Buyers' position that the trial court erred when it prevented them from presenting parol and extrinsic evidence that the contingency clause was applicable if the Buyers could not operate a kennel from the barn. Since Buyers' contentions are all bark and no bite, nonsuit therefore was properly granted to the Sellers, and the Buyers cannot recover against them based upon the contingency clause.

## Appeal at Number 2967 EDA 2015

The appeal at number 2967 EDA 2015 was filed by the Buyers' real estate agent, Fox & Roach LP d/b/a Prudential Fox & Roach and Marian

Galanti, which we continue to refer to collectively as Prudential. Prudential raises the following positions:

1. Whether the trial court erred in denying Appellants, Fox & Roach LP d/b/a Prudential Fox & Roach and Marian Galanti's, Motion for Summary Judgment, since, as a matter of law, the Plaintiffs were unable to prove that Fox & Roach LP breached a duty that was supposedly owed to the Plaintiffs or that there [was] a causal connection between the conduct of Fox & Roach LP and the alleged resulting injury sustained by the Plaintiffs to establish negligence?

2. Whether the trial court erred in denying Fox & Roach LP's Motion in Limine to preclude the testimony of John Hosey, since there was no competent evidence to establish the value of the property as a business use (doggy daycare)?

3. Whether the trial court erred in denying Appellants', Fox & Roach LP d/b/a/ Prudential Fox & Roach and Marian Galanti's, Non-Suit since the Plaintiffs failed to set forth expert testimony to establish a breach of duty of a professional real estate agent, or to prove a causal connection between Fox & Roach LP's conduct and the resulting injury allegedly sustained by the Plainitffs during its case in chief?

4. Whether the trial court erred in denying Appellants, Fox & Roach LP d/b/a/ Prudential Fox & Roach and Marian Galanti's, Motion for Judgment Notwithstanding the Verdict ("JNOV") since, as a matter of law, the Plaintiffs failed to set forth expert testimony to establish a breach of duty of a professional real estate agent, and there was no causal connection between Fox & Roach LP's conduct and the resulting injury allegedly sustained by the Plaintiffs to establish negligence?

5. Whether the trial court erred in charging the Jury under the comparative Negligence standard as opposed to Contributory Negligence standard since the action was not brought to recover damages for negligence resulting in death or injury to person or property?

6. Whether the trial court abused its discretion when it reversed its original decision denying Plaintiffs' claims for "prevailing part" attorney's fees and post-judgment interest?

Appellants' brief at number 2967 EDA 2015 at 4-5.

The first, third, and fourth issues raised by Prudential in this appeal are identical. In those issues, Prudential challenges the denial of summary judgment, a nonsuit, and judgment notwithstanding the verdict because 1) there was no evidence that it breached a duty; and 2) there was no proof of a causal connection between its conduct and the injury sustained by the Buyers. Since the matter proceeded to a jury trial and a verdict was rendered against it, the only pertinent issue on appeal is whether Prudential should have been granted judgment n.o.v. As we explained in ***Whitaker v. Frankford Hosp. of City of Philadelphia,*** 984 A.2d 512, 517 (Pa.Super. 2009)

> Once this case proceeded to trial and Appellants presented a defense, the trial court's refusal to grant them summary judgment and a compulsory nonsuit became moot. ***See Gbur v. Golio***, 932 A.2d 203 (Pa.Super. 2007); ***Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.***, 933 A.2d 664, 668 (Pa.Super. 2007). Once a jury verdict in favor of Appellees was entered, the issue became whether the trial court erred in failing to grant them judgment notwithstanding the verdict. ***Gbur, supra***; ***Northeast Fence & Iron Works, Inc., supra***.

In the present case, the requests for summary judgment and nonsuit were mooted after Prudential presented a defense and the matter proceeded to a verdict. We thus address Prudential's first, third, and fourth contention under the proper rubric, which is whether it should have been granted

- 19 -

judgment n.o.v. Our standard of review is as follows: "An appellate court will reverse a trial court's grant or denial of a JNOV only when the appellate court finds an abuse of discretion or an error of law. Our scope of review with respect to whether judgment n.o.v. is appropriate is plenary[.]" **Czimmer v. Janssen Pharm., Inc.**, 122 A.3d 1043, 1050 (Pa.Super. 2015). There are two grounds upon which judgment n.o.v. can be granted: 1) the moving party is entitled to judgment under the law; or 2) "the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant[.]" **Id.** As to the first basis, "a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor;" under the second ground, "the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure." **Id**.

As noted, Prudential raises two positions in support of its claimed entitlement to judgment n.o.v. First, it avers that it owed no duty to the Buyers herein. The Buyers' evidence established that Prudential knew that the Buyers were unwilling to buy the property unless the barn could be used as the kennel. Prudential improperly drafted the contingency clause so that the sale was not contingent upon the kennel being operated from the barn; instead, the language drafted by Ms. Galanti and approved by her supervisor indicated that the sale would be secure if a kennel could be operated from

the property. Ms. Hensley stated that she relied upon Prudential to draft a contingency clause that protected her interests, and Mr. Greisiger testified that he specifically asked Ms. Galanti about the clause and she assured him that it would protect them from having to keep the property if the barn could not be used as a kennel.

Restatement (Second) of Torts § 323, negligent performance of an undertaking to render services, imposes a duty upon Prudential under the proof presented by the Buyers.

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323. **See Evans v. Otis Elevator Co**., 168 A.2d 573 (Pa. 1961); s**ee also Feld v. Merriam**, 485 A.2d 742, 746 (Pa. 1984) (Restatement (Second) of Torts § 323 has been adopted "as an accurate statement of the law in this Commonwealth."); **accord Bruno v. Erie Ins. Co.**, 106 A.3d 48, 69 (Pa. 2014) ("our Court has long recognized that a party to a contract may be found liable in tort for negligently performing contractual obligations and thereby causing injury or other harm to another contracting party").

Herein, there was sufficient evidence to support the jury's finding that Prudential breached its contractual undertaking by drafting a deficient contingency clause and allowing consummation of a purchase of property that was not acceptable to the Buyers. It did not properly assist the Buyers throughout the transaction, nor act in their best interests since it allowed them to buy the property without securing a survey to ensure that the barn could be used as a kennel and it drafted a contingency clause with imprecise language.

Prudential maintains that the Buyers cannot establish that it breached its duty or caused the Buyers harm because the Buyers knew that they could have obtained a survey to ensure that the barn satisfied the 200 foot set-back for use as a kennel. Prudential fails to appreciate that the contract placed the burden on it to use its professional knowledge to secure property acceptable to the Buyers and to assist Buyer throughout the transaction in securing the acceptable property. Under the pertinent contract language, **Prudential** should have advised the Buyers to obtain a survey before the Buyers executed the agreement of sale in order to ensure that the barn could be used as a kennel, which Prudential knew was the condition for the purchase in question. The fact that the Buyers also were aware that they could obtain a survey does not erase the existence of a duty by Prudential.

The Buyers, under the contract language, were permitted to rely upon Prudential, which agreed to aid them throughout the process and secure a

property acceptable to them. Under the contract, it was Prudential's responsibility to protect the Buyers' interest and to tell them to obtain a survey. Additionally, the failure to obtain a survey caused the Buyers' harm in that the survey would have alerted the Buyers to the fact that the barn did not meet the setback requirements and they would not have purchased the property because it was not acceptable to them. Likewise, under the contract, the responsibility to draft a contingency clause that protected the Buyers was Prudential's.

In arguing that there was no duty and that the evidence failed to prove that its conduct caused the Buyers injury, Prudential also relies upon the fact that the Buyers knew that one of the measurements taken before the agreement was signed indicated that the barn was 196 feet from the property line. However, Mr. Greisiger explained that there were steps inside the barn, and he was assured by Mr. Duvall and Mr. Lippincott that, so long as the dog enclosures were placed beyond the stairwell, the 200 foot set back would be satisfied. That advice was incorrect. Prudential contractually assumed the responsibility to ensure that this advice was proper. We thus reject this position.

Prudential also maintains that the Buyers were required to present expert testimony to prove that it "deviated from any standard of conduct." Appellants' brief at 2967 EDA 2015 at 18. It posits that, since it was a professional real estate agent, an expert witness was required to outlined its

standard of care and its breach of the standard of care applicable to professional real estate agents. The fact that defendant is a professional does not, in and of itself, mandate that a plaintiff present expert testimony on breach of a standard of care. *Cipriani v. Sun Pipe Line Co.*, 574 A.2d 706, 710 (Pa.Super. 1990). To the contrary, "expert testimony is not required when the matter under consideration is simple and the lack of ordinary care is obvious and within the range of comprehension of the average juror." *Id*.; *accord Brannan v. Lankenau Hosp*., 417 A.2d 196, 201 (Pa. 1980) (reversing nonsuit granted to hospital based on lack of expert testimony because "the matter under investigation [was] so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even non professional persons."

Herein, expert testimony was not needed in order to establish that Prudential's conduct was negligent since that negligence was obvious and within the range of comprehension of the average juror. Prudential knew that the Buyers desired to buy the property only if the kennel could be placed in the barn and drafted a contingency clause that did not articulate this desire. It failed to advise the Buyers to obtain a survey when that survey would have revealed that the barn did not satisfy the township's 200 foot set back requirement. Prudential's lack of care was within the comprehension of the ordinary lay person, and expert testimony was not needed herein. *Cipriani*, *supra*. Likewise, we reject Prudential's claim that

expert testimony was needed to establish causation. Due to the lack of survey and improper language in the contingency clause, the Buyers could not place their kennel in the barn, and they were willing to purchase the property only if they could.[4]

In conclusion, our review of the record indicates that the law does not mandate entry of judgment n.o.v. in favor of Prudential on the asserted grounds. Additionally, that review confirms that a verdict in its favor was not beyond peradventure. Hence, the trial court did not abuse its discretion or commit an error of law in denying Prudential's request for judgment n.o.v.

We now examine Prudential's second position, which is that the trial court erroneously denied its motion in *limine* to preclude the Buyers' expert testimony of John Hosey, who testified as to their damages. As we observed in **Parr v. Ford Motor Co.**, 109 A.3d 682, 690 (Pa.Super. 2014), a "motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence" and accords "the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs[.]" The "trial court's

_____

[4] Prudential also suggests that the Buyers cannot recover herein since they were given a permit to operate a kennel. However, it was not contested that a kennel could be operated from the property. While they had a permit to run a kennel, they were told by the township after they purchased the real estate that they could not use the barn to house the dogs, and the barn would not be issued a permit to be operated as a kennel. Hence, this position is a red herring.

decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review." **Id**.   A decision about whether evidence is admissible is "within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion." **Id**.  "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Id**.

Mr. Hosey's valuation of the property was based upon the assumption that it was a noncommercial property, *i.e.*, that a business could not be operated on it.   Since the property could have been used as a kennel, Prudential postulates that Mr. Hosey's opinion, which was that the property was worth only $700,000 as noncommercial real estate, did not constitute the proper measure of damages herein.

We conclude that Mr. Hosey's testimony was properly admitted.  Since the Buyers did not intend to buy the property absent the ability to use the barn as a kennel, its worth to them after purchase was only as a noncommercial property because they could not, in fact, use the barn as a kennel.  Simply put, when the Buyers bought the property, it did not have a commercial value to them because their sole purpose in purchasing it was to operate a kennel in the barn.   Mr. Hosey therefore correctly valued the

property as a noncommercial property. We perceive no abuse of discretion in the trial court's decision to allow him to testify.

Prudential next notes that the Buyers originally asserted that it was negligent in failing to obtain a survey and that the fair market value of the property would have been the same regardless of whether a survey was obtained. Prudential is being deliberately obtuse. This lawsuit was not just about the failure to obtain a survey. The Buyers also premised liability herein upon the fact that Prudential improperly drafted the contingency clause so that the Buyers could not void the transaction once the permit to use the barn as a kennel was declined.

Our Supreme Court observed in *In re Brooks Bldg.*, 137 A.2d 273, 274 (Pa. 1958), "[M]arket value has been defined as the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." In this case, the damages sought were not based upon the fact that the Buyers paid more than "fair market value" for the property than it was actually worth. Rather, the Buyers' claim was that its fair market value to them was not as a commercial property since they could not operate their kennel in the barn. At trial, Mr. Hosey appropriately described the measure of damages flowing to the Buyers due to their inability to operate a kennel on the property in the state that it existed when it was purchased. To them, it was not a commercial property.

We therefore reject Prudential's challenge to the trial court's decision to allow Mr. Hosey's testimony into evidence.

Prudential's fifth issue on appeal is that the trial court "erred in charging the Jury under the Comparative Negligence standard as opposed to Contributory Negligence standard since the action was not brought to recover damages for negligence resulting in death of injury to person or property." Appellants' brief at 2967 EDA 2015, at 36. We agree with the trial court and with the Buyers that this issue has been waived.

While Prudential did proffer a written jury instruction on contributory negligence at the court charging conference, the trial court expressly stated to the parties that it planned to give the jury a comparative negligence instruction. Prudential failed to raise any objection to the court's proposal during that proceeding. Then, at trial, prior to the charging the jury, the court articulated:

> THE COURT: Mitigation does not apply, so there will be no mitigation of damages charge. **It's a comparative negligence case**. I don't believe the facts in this case are the type of facts that give rise to mitigation. In a mitigation charge, for example, classically it's the witness was told to go to a doctor and they didn't go to a doctor for a follow-up procedure, and something occurred. This is clearly not the case here. I don't think it's analogous.
>
> So there will be no mitigation of damages charge. **This is strictly a comparative negligence case**.

N.T. Trial, 6/11/15, at 3 (emphases added). No objection was raised to this statement.

- 28 -

Thereafter, in accordance with its expressed intent at the charging conference and at trial before instructing the jury, the trial court instructed the jury that it had to find whether Prudential was negligent and whether the Buyers were negligent, and it defined negligence. The court then reviewed with the jury the special interrogatories that the jury had to answer. The questions included whether the Buyers were negligent and whether Prudential was negligent. Next, the court outlined question number five stating, "This is called the comparative question." *Id*. at 57. The court explained:

> You have now, if you get to question number five, determined that the plaintiff is negligent and caused harm and the defendant was negligent and caused harm, but now you're given the task of **comparing their negligence**.
>
> You will assign a percentage of negligence, the impact that that particular negligence may have had, as long as you divide it any way you want among all parties that you find were negligent in cause. . . . So whatever you assign to the parties, as long as the total is 100 percent in your determination of the **comparative negligence**, you have answered this question, okay?

*Id*. at 57-58 (emphasis added).

At the conclusion of the charge, the trial court told the jury that it was "going to ask the attorneys if there's anything at this point in time they wish me to clarify." *Id*. at 60. Prudential's lawyer affirmatively represented, "Nothing, Your Honor." *Id*. After the Buyers' attorney was asked, a sidebar was held, where the court again queried if there were "[a]ny objections to the charge?" *Id*. at 62. Prudential did not raise an objection. The trial

court informed the jury, "I'm pleased to report there are no objections to my charge at this point in time." *Id*. at 63.

Based on this state of the record, the trial court opined that Prudential "waived the issue of this court's jury instructions regarding comparative versus contributory negligence by failing to object to an instruction on comparative negligence at trial." Trial Court Opinion, 2/1/16, at 22. We agree with this position. At the charging conference, there was no objection when the court indicated that it believed that this case was a comparative negligence case. Next, Prudential had four opportunities to object to the comparative negligence charge during the instructions to the jury. It never offered the trial court an opportunity to correct any error in charging the jury on comparative rather than contributory negligence.

We recognize that dissemination of a jury charge, as Prudential did in the present case, is normally sufficient to preserve a challenge to the charge. However, we find the case of *Thomas Jefferson Univ. v. Wapner*, 903 A.2d 565, 570 (Pa.Super. 2006), dispositive. Therein, a party requested an instruction, the trial court then discussed each instruction proffered to it, and the court indicated that it would not disseminate the requested instruction. The party failed to object, acquiescing in the court's ruling. We concluded that the question of whether the instruction should have been given was not preserved since the party "agreed not to pursue

the instruction it initially proffered, despite the clear opportunity and ability to do so." ***Id***. at 571 (footnote omitted).

In the present case, Prudential had numerous opportunities to have the court correct any error in the charge in connection with the comparative versus contributory negligence question. The purpose behind the requirement that a party object to trial court error is simple. It accords the trial court the opportunity to correct any error and avoid another trial. ***Dilliplaine v. Lehigh Valley Trust Co.***, 322 A.2d 114 (Pa. 1974). This precept certainly applies herein, where Prudential was given four chances at trial to point out to the court that his case was one involving contributory rather than comparative negligence. This error could have been avoided by an objection. It therefore has waived its allegation of error in this respect. ***Thomas Jefferson***, ***supra***.

Prudential's final issue in this appeal is that the Buyers waived their request for attorney fees. This position was discussed and rejected in the Buyers' appeal at 2911 EDA 2015. Hence, we need not address it further.

## Appeal Numbers 3098 and 3099 EDA 2015

The appeal at number 3098 EDA 2015 was filed by the Sellers, Donald and Bernice Duvall, and the same appeal was assigned docket number 3099 EDA 2015, which we will dismiss as duplicative. In this cross-appeal, the Sellers raise the following issues:

1. Did the Trial Court err in denying the Motion for Summary Judgment filed by Appellees, Donald and Bernice Duvall?

2. Did the Trial Court err in granting the Motion for Summary Judgment filed by Appellants, Kurfiss Sotheby's International Realty, George H. Wells and James Fingleton and dismissing said parties from the case, with prejudice?

3. Did the Trial Court err in denying the Motion in Limine filed by Appellees, Donald Duvall and Bernice Duvall, to preclude the testimony of John Hosey?

4. Did the Trial Court correctly grant the Motion in Limine as to the Gist of the Action Doctrine and Parol Evidence Rule filed by Appellees, Donald Duvall and Bernice Duvall?

5. Did the Trial Court correctly grant the Motion for Nonsuit filed by Appellees, Donald Duvall and Bernice Duvall?

Appellants' brief at No. 3098 EDA 2015 at 2-3.

The Sellers first maintain that they should have been granted summary judgment prior to trial. The Sellers next argue that their agent, Sotheby's, was improperly granted summary judgment since the Sellers had a cross-claim for indemnification pending against Sotheby's. *Id*. at 22. The Sellers' third position is that the trial court should have granted their motion in *limine* to preclude the testimony of John Hosey. The first three issues have been mooted by the grant of nonsuit in the Sellers' favor, which we have affirmed.[5] The Sellers were not aggrieved by the decisions challenged in issues four and five, and therefore cannot contest them on appeal. *See* Pa.R.A.P. 501 ("Except where the right of appeal is enlarged by statute, any

---

[5] We note that the Sellers have not presented a claim for attorney fees against the Buyers or Prudential herein.

party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom."). This protective cross-appeal is therefore dismissed.

At appeal number 2911 EDA 2015, we affirm the judgment, but remand for the calculation of attorney fees to be awarded to Carole Anne Hensley and John R. Greisiger against Prudential Fox & Roach and Marian Galanti, and for imposition of post-judgment interest on the jury verdict. In appeal number 2911 EDA 2015, we affirm the grant of nonsuit in favor of Donald and Bernice A. Duvall. At appeal numbers 2967 EDA 2015 and 3098 EDA 2015, we affirm the judgment. The appeal at 3099 EDA 2015 is dismissed as duplicative of appeal number 3098 EDA 2015, which is dismissed as moot. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2017

- 33 -