J-S24001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: S. E. N., A MINOR IN THE MATTER OF THE ADOPTION OF: J. J. S., A MINOR IN THE MATTER OF THE ADOPTION OF: K. E. S., A MINOR IN THE MATTER OF THE ADOPTION OF: R. N. S., A MINOR IN THE MATTER OF THE ADOPTION OF: J. L. S., A MINOR | : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | | No. 110 WDA 2025 |
| APPEAL OF: S. L. N., MOTHER | : | |

Appeal from the Decree Entered December 16, 2024
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
91 in Adoption 2024,
91A in Adoption 2024, 91B in Adoption 2024,
91C in Adoption 2024, 91D in Adoption 2024

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY NICHOLS, J.:               **FILED:  October 21, 2025**

S.L.N. (Mother) appeals[1] from the decrees terminating her parental rights to S.E.N., J.J.S., K.E.S., R.N.S., and J.L.S. (collectively, Children).[2]  On

_____

[1] Children's father, J.C.S. (Father), voluntarily relinquished his parental rights. Father did not appeal and is not a party to this appeal.

[2] S.E.N. was born in April of 2016 and was eight years old at the time of the termination of parental rights (TPR) hearing.  *See* Agency Ex. 3 at 1.  J.J.S. was born in September of 2017, and was seven years old at the time of the TPR hearing.  *See* Agency Ex. 4 at 1.  K.E.S. was born in June of 2019, and was five years old at the time of the TPR hearing.  *See* Agency Ex. 5 at 1. R.N.S. was born in March of 2021, and was three years old at the time of the TPR hearing.  *See* Agency Ex. 6 at 1.  J.L.S. was born in April of 2022, and was two years and seven months old at the time of the TPR hearing.  *See* Agency Ex. 7 at 1.

appeal, Mother argues that Erie County Office of Children and Youth (the Agency) failed to establish grounds to terminate Mother's parental rights by clear and convincing evidence. We affirm.

The orphans' court summarized the relevant facts and procedural history of this matter as follows:

> Mother is the natural parent of eight (8) children. Mother has a significant history with [the Agency] dating back to 2010 when her two (2) oldest children[, who are not the subjects of these proceedings,] were removed from her care and adjudicated dependent due to concerns of "physical abuse, substance abuse, inadequate health care needs, inadequate basic needs and lack of supervision." The dependency action for the oldest children closed in October of 2014, with Permanent Legal Custodianship ("PLC").
>
> Subsequently, Mother gave birth to six (6) other children S.E.N.[,] J.J.S.[,] K.E.S.[,] R.N.S.[,] J.L.S.[,] and J.S. . . . At the time of J.S.'s birth in October of 2023, her umbilical cord tested positive for amphetamines, methamphetamines, and cocaine. Consequently, the family was [referred to] the Agency for ongoing services.
>
> On February 19, 2024, the Agency received a report that J.S. was unresponsive in the home and ultimately passed away. At that time, it was reported to the Agency that seven (7) year old S.E.N. was left in charge of four (4) month old J.S. while Father was upstairs sleeping and Mother left the home to purchase cigarettes. Mother returned home after being contacted by Father and it was reported by the Erie Police Department ("EPD") that Mother was combative and uncooperative with them and appeared to be under the influence of methamphetamine. During the investigation into J.S.'s death EPD searched the home and located firearms, cocaine, drug paraphernalia and ammunition in one of [] Children's bedroom[s]. On February 20, 2024, the Agency obtained an Emergency Protective Order ("EPO") for [] Children.
>
> *   *   *
>
> On February 23, 2024, the Agency had [] Children evaluated at UPMC Hamot by Childrens Nurse Practitioner, Karin Wickwire ("Ms. Wickwire"). At that time four (4) of [] Children were given

- 2 -

drug screens. Notably, R.N.S., age 2 and J.L.S., age 1 tested positive for cocaine, nicotine, and caffeine. S.E.N., age 7 and J.L.S., age 4 tested positive for caffeine and nicotine.

On February 26, 2024, the Agency filed a Dependency Petition for each of [] Children alleging they were without proper parental care or control in the care of both Mother and Father. Regarding Mother, the Agency alleged the concerns outlined above; concerns for Mother's untreated mental health; concerns for domestic violence in the home; and Mother's criminal history, including "Prostitution, Possession of a Controlled Substance, Possession of Drug Paraphernalia, Bad Checks and Retail Theft (4 convictions)."

The Adjudication Hearing was held on March 21, 2024. . . .

Ms. Wickwire[, the nurse practitioner,] testified that when [] Children were brought to the Care Clinic she conducted "head to toe examinations of [] Children and obtained their urine sample for drug testing." Ms. Wickwire noted [] Children did not exhibit any signs of physical traumas, but K.E.S., suffered from severe tooth decay, commonly referred to as "bottle rot" and needed to see a pediatric dentist right away. Additionally, Ms. Wickwire testified to the urine results set forth above and opined, while she couldn't give a specific time frame as to when [] Children were exposed to the substances, the cocaine metabolites could have been in their systems anywhere from one to three days.

Orphans' Ct. Op., 3/7/25, at 1-3 (citations omitted).

At the conclusion of the hearing, the juvenile court adjudicated Children dependent and ordered the removal of Children from Parents' care. *See, e.g.*, N.T. Dependency Hr'g, 3/21/24, at 44-45; Agency Ex. 9 (Dependency Adjudication Order, Docket No. CP-25-DP-25-2024, 3/26/24, at 1).

The juvenile court ordered Mother to participate in a treatment plan, which included, among others, the following goals for Mother:

1. Refrain from the use of illegal/illicit drugs and submit to random color-coded urinalysis through Esper Treatment Center;

2. Participate in a drug and alcohol assessment and follow through with any and all recommendations;

3. Participate in a mental health assessment and follow through with all treatment recommendations;

4. Participate in Family Preservation Services through Corry Counseling and follow all recommendations[.]

Dependency Adjudication Order, Docket No. CP-25-DP-25-2024, 3/26/24, at 3.

On October 2, 2024, Agency filed petitions to involuntarily terminate Father and Mother's parental rights. *See* Orphans' Ct. Op., 3/7/25, at 7 & n.8.

The orphans' court conducted a hearing on the petitions to involuntarily terminate Mother's parental rights (TPR hearing) on December 11, 2024. Mother appeared at the hearing with counsel. Children were represented by Michelle Alaskey, Esq., who served both as Children's guardian *ad litem* (GAL) and as Children's legal counsel.[3]

---

[3] During the TPR hearing, Attorney Alaskey noted on the record that there was no conflict between K.E.S., R.N.S., and J.L.S.'s best interests and legal interests because they were too young to articulate a preference. *See* N.T. TPR Hr'g, 12/11/24, at 83. Attorney Alaskey further explained that there was no conflict between S.E.N. and J.J.S.'s best interests and legal interests because both children indicated that they wished to be adopted. *See id.* The orphans' court made an independent determination that there was no conflict between Children's best interests and legal interests, noting that the court had spoken to Children in the presence of Attorney Alaskey. *See id.* at 83-84. Therefore, we conclude that the orphans' court fulfilled its obligation to determine whether a conflict in dual representation existed. *See, e.g.*, 23 Pa.C.S. § 2313(a); *In re Adoption of K.M.G.*, 240 A.3d 1218, 1235-37 (Pa. 2020); *In re T.S.*, 192 A.3d 1080, 1092 (Pa. 2018).

The orphans' court summarized the evidence presented at the termination of parental rights hearing as follows:

At the onset of the proceeding, the Agency moved to admit the following exhibits into evidence, without objection: [Agency Ex.] 1 Receipt of Service/Attempt to Mother; [Agency Ex.] 2 Receipt of Service/Attempt to Father; [Agency Ex. 3 through 7] Juvenile Dependency Dockets (25-29 of 2024); [Agency Ex.] 8 Dependency Petitions; [Agency Ex. 9 through 13] Juvenile Court Orders (25-29 of 2024); [Agency Ex.] 14 Court Summaries; [Agency Ex.] 15 Criminal Docket(s) (Mother); [Agency Ex.] 16 Criminal Docket(s) (Father); [Agency Ex.] 17 Urine Screens (Mother); [Agency Ex.] 18 Urine Screens (Father); [Agency Ex.] 19 Family Preservation Services Reports; [Agency Ex.] 20 Child Advocacy Evaluation (R.N.S.); [Agency Ex.] 21 Child Advocacy Evaluation (J.L.S.); [Agency Ex.] 22 City of Erie Police Department Report(s); [Agency Ex.] 23 Adjudication/Dispositional Hearing Transcript (3/21/2024). At trial the orphan[s'] court heard testimony from Agency caseworker Carrie Bielak ("Ms. Bielak") and Mother.

\*   \*   \*

Ms. Bielak testified she became the caseworker for the family . . . in January 2024. Ms. Bielak testified to the factual and procedural history from J.S.'s birth until the change of goal hearing as set forth above. Ms. Bielak testified that after [] Children's removal [on February 20, 2024,] the Agency asked the [dependency] court to suspend [] Children's visits with [] Parents due to the trauma [] Children were suffering as a result of their sibling's death. Notably, part of this was due to seven-year-old S.E.N. reporting that [] Parents told her the death of her sibling was her fault. Per Ms. Bielak, S.E.N. was caring for her siblings and found J.S. unresponsive while Father slept and Mother reportedly went to the store to get cigarettes.

Ms. Bielak testified that after J.S.'s death EPD found cocaine, firearms and paraphernalia in the one of [] Children's bedrooms and subsequently [] R.N.S. and J.L.S. . . . tested positive for cocaine, nicotine and caffeine. Ms. Bielak testified that as a result of [] Children's drug screens, Mother was charged with two (2) counts of Endangering the Welfare of Children[, graded] as a felony of the second degree. Mother remained incarcerated on

- 5 -

these charges at the time of the [TPR hearing] due to a probation detainer for prior Retail Theft charges.

Ms. Bielak also testified that following the removal it was determined the four older Children needed to undergo extensive dental work due to severe tooth decay.

Ms. Bielak then testified that despite Mother's lengthy history with the Agency beginning in 2011, when her oldest children[, who are not the subject of these proceedings,] were removed from her care due to concerns of parental substance abuse, Mother continues to deny that she has a problem with substance abuse.

\* \* \*

[Ms. Bielak further testified that Mother was a no-show for sixty-two drug tests, and on the eleven occasions where Mother submitted a urine sample, she tested positive for methamphetamine and sometimes amphetamines. Ms. Bielak also stated that despite the results of these drug tests, Mother denied that she was using methamphetamine.]

\* \* \*

Regarding [] Children, Ms. Bielak testified that S.E.N., J.J.S., and K.E.S. were currently placed in a foster home that was willing to be a permanent resource for all five (5) Children and the Agency was in the process of moving R.N.S. and J.L.S. into that home. Ms. Bielak testified the home was willing and able to handle [] Children's prior trauma and [] Children were adjusting well. Ms. Bielak testified that when she spoke to S.E.N. about Mother, S.E.N. said "I want you to tell my mom that I love her, but I am happy and I'm having fun." Ms. Bielak stated it was her belief the termination of Mother's parental rights would not be detrimental to [] Children and that finding permanency through adoption was in their best interest. Ms. Bielak noted that upon being moved to their new foster/pre-adoptive home, S.E.N. and J.J.S. requested to still have contact with their former foster family but neither requested contact with Mother.

Orphans' Ct. Op., 3/7/25, at 7-11 (citations and footnotes omitted and some formatting altered).

At the conclusion of the hearing on December 11, 2024, the orphans' court terminated Mother's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b). **See** N.T. TPR Hr'g, 12/11/24, at 84-86. Subsequently, on December 16, 2024, the orphans' court entered written decrees memorializing its decision to terminate Mother's parental rights.[4]

Mother filed a timely *pro se* notice of appeal.[5] Mother subsequently filed a counseled Rule 1925(b) statement, and the orphans' court filed an opinion addressing Mother's claims.

On appeal, Mother presents the following issues:

> Did the [orphans'] court abuse its discretion in terminating [Mother's] parental rights when the record is comprised of insufficient competent evidence to establish grounds for

---

[4] The orphans' court's decrees are dated December 11, 2024, but they were docketed on December 13, 2024, and notice was sent to the parties on December 16, 2024. **See** Pa.R.A.P. 108(c) (providing that the date of entry of an order is the day the clerk of the orphans' court mails or delivers copies of the order to the parties); **see also** Pa.R.O.C.P. 4.6. We have amended the caption accordingly.

[5] We note that although Mother failed to file separate notices of appeal at each orphans' court docket number pursuant to **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), and its progeny, we nonetheless decline to quash Mother's appeal or remand for the filing of corrected notices of appeal. Here, the record reflects that the orphans' court advised Mother that she could seek appellate review by filing "an appeal" within thirty days. Orphans' Ct. Notice, 12/18/24, at 1 (unpaginated); **see also In re K.M.W.**, 238 A.3d 465, 469-70 (Pa. Super. 2020) (*en banc*) (declining to quash the appeal after concluding that a breakdown in the court system occurred when the trial court informed the appellant that she could seek relief by filing a single appeal from multiple trial court docket numbers); **Commonwealth v. Larkin**, 235 A.3d 350, 352-54 (Pa. Super. 2020) (*en banc*).

termination, and when [Mother] had complied with court ordered services?

Did the [orphans'] court abuse its discretion by finding that severance of [Mother's] parental rights would serve the child[ren]'s best interest?

Mother's Brief at 4 (some formatting altered).[6,7]

We begin with our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial

_____

[6] We note that in her Rule 1925(b) statement, Mother also claimed that the orphans' court erred by terminating Mother's parental rights pursuant to "Section 2511(a)(8)(a) [sic]." Mother's Rule 1925(b) Statement, 2/18/25, at 2. However, the record indicates that the orphans' court did not terminate Mother's parental rights pursuant to Section 2511(a)(8). **See e.g.**, Decree, Docket No. 91 in Adoption 2024, 12/16/24. Therefore, we do not address whether termination was appropriate under Section 2511(a)(8).

[7] While Mother identifies two issues for our review in her statement of questions presented, the argument section of her brief is divided into four sections: (1) termination of Mother's parental rights under 23 Pa.C.S. § 2511(a)(1); (2) termination of Mother's parental rights under 23 Pa.C.S. § 2511(a)(2); (3) termination of Mother's parental rights under 23 Pa.C.S. § 2511(a)(5); and (4) termination of Mother's parental rights under 23 Pa.C.S. § 2511(b). **See** Mother's Brief at 7-15. We note that the Pennsylvania Rules of Appellate Procedure require that the argument section of the brief be divided into as many parts as there are questions to be argued. Pa.R.A.P. 2119(a). Failure to do so may result in waiver. **Ramalingam v. Keller Williams Realty Grp., Inc.**, 121 A.3d 1034, 1042 (Pa. Super. 2015). While we do not condone Mother's failure to comply with the Rules of Appellate Procedure, we find that the defect in Mother's brief does not impede our ability to render meaningful appellate review; therefore, we decline to find waiver on this basis. **Id.**

court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re H.H.N.*, 296 A.3d 1258, 1263 (Pa. Super. 2023) (citations omitted); *see also In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (explaining that "the trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence" (citation omitted and some formatting altered)).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.  One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).  We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm an order terminating parental rights.  *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

### Section 2511(a)(2)

Mother argues that the evidence was insufficient to support the orphans'

court's conclusion that there was a continued refusal to provide essential parental care to Children and the causes of that refusal will not be remedied. Mother's Brief at 10-12. Specifically, Mother contends that the record established that Mother "was undergoing treatment at Crossroads rehab for substance abuse at and around the time of the adjudication" of dependency. *Id.* at 11. Mother also claims that Ms. Bielak testified that Mother was receiving Suboxone as treatment for opioid use disorder "for quite some time." *Id.* (citing N.T. TPR Hr'g, 12/11/24, at 60-61). Lastly, Mother asserts that she tested negative for controlled substances while under the supervision of Erie County Adult Probation while the dependency matter was pending. *Id.* (citing N.T. TPR Hr'g, 12/11/24, at 62-63).

Section 2511(a)(2) provides as follows:

**§ 2511. Grounds for Involuntary Termination.**

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

To satisfy the requirements of [Section] 2511(a)(2), the moving party must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care,

control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied.

*In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019) (citations and quotation marks omitted).

Additionally, this Court has explained:

Unlike subsection (a)(1), subsection (a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being. Therefore, the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and strong, continuous parental ties, which the policy of restraint in state intervention is intended to protect. This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it[.]

*In re E.A.P.*, 944 A.2d 79, 82 (Pa. Super. 2008) (citations omitted and formatting altered).

Further, this Court has stated that a "child's need for consistent parental care and stability cannot be put aside or put on hold." *In re K.M.W.*, 238 A.3d 465, 474 (Pa. Super. 2020) (*en banc*) (citation omitted and some formatting altered).

Thus, while "sincere efforts to perform parental duties," can preserve parental rights under subsection (a)(1), those same efforts may be insufficient to remedy parental incapacity under subsection (a)(2). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities." *In re A.L.D.*[, 797 A.2d 326, 340 (Pa. Super. 2002)]. A "parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *Id.*

- 11 -

*In re Z.P.*, 994 A.2d 1108, 1117-18 (Pa. Super. 2010) (some citations omitted and formatting altered).

Here, the orphans' court explained:

Children in the instant matter came into care in February 2024, for similar reasons. Mother was set up with service providers through both [Agency] and her probation officer and given a treatment plan; however, . . . she was unable to alleviate the circumstances that led to [] Children's dependency.

The record repeatedly reflects Mother was not only unable to alleviate the circumstances that led to [] Children's removal but refused to acknowledge them. Mother put her focus into repeatedly making allegations that the Agency had unjustly taken [] Children while refusing to take any accountability for the circumstances which led to [] Children's placement outside of her home. As a result, she failed to make any progress in her treatment plan. Frankly, if Mother had spent less time blaming others for her circumstances and put that time and energy into her treatment plan, this could have been a successful reunification. Perhaps what is most concerning is Mother's testimony at the [TPR hearing]. At that time Mother was and had been incarcerated for several months and presumably was clean, yet she still lacked the clarity that tends to come with sobriety, as she continued to deny substance abuse issues or accept her role in [] Children's removal.

. . . . Children had been in the care and custody of the Agency since the EPO was filed on February 20, 2024. The Agency presented clear and convincing evidence at the trial that in the eight (8) months preceding the filing of the Petition, Mother was unable and unwilling to perform her parental duties and remedy the conditions that led to [] Children's removal despite the assistance of the Agency.

Orphans' Ct. Op. at 15.

Following our review of the record, we discern no abuse of discretion by the orphans' court, and we conclude that the orphans' court's findings are

- 12 -

supported by the record. ***See H.H.N.***, 296 A.3d at 1263; ***Q.R.D.***, 214 A.3d at 239.

Mother's claim that she was making progress in her substance abuse treatment and only tested positive for prescription Suboxone is belied by the record. At the TPR hearing, Ms. Bielak testified that Mother tested positive for methamphetamine eleven times during the life of the dependency case and the Agency entered copies of the drug tests performed on Mother's urine samples into evidence. ***See*** N.T. TPR Hr'g, 12/11/24, at 32-33; Agency Ex. 17 (eleven test results from May 2, 2024 through July 5, 2024 that were positive for methamphetamine in addition to prescription Suboxone). Further, Ms. Bielak testified that Mother has not acknowledged that she is using illegal drugs and instead Mother has blamed the Esper Treatment Center for producing either inaccurate or falsified test results. ***See id.*** at 32, 40; ***see also id.*** at 75, 80 (Mother testified that her drug test results were inconsistent and asserted that Esper was "under investigation"). Lastly, because Mother's visitation with Children was dependent on her passing drug tests, Mother did not have any visitation with Children at any time during the pendency of the dependency matters. ***See id.*** at 34-35, 42.

For these reasons, we conclude that the orphans' court did not abuse its discretion in concluding that termination was appropriate under Section

2511(a)(2).[8]  ***See H.H.N.***, 296 A.3d at 1263; ***K.M.W.***, 238 A.3d at 474.

Accordingly, Mother is not entitled to relief on this claim.

## Section 2511(b)

Mother argues that the orphans' court failed to sufficiently examine the effect of severing the bond between Mother and Children.  Mother's Brief at 14-15.  Mother claims that the "Children's love for their Mother is mentioned throughout the record."  ***Id.*** at 14 (some formatting altered).  Therefore, Mother concludes that the Agency has not established that terminating Mother's parental rights would serve Children's best interests.  ***Id.*** at 15.

Section 2511(b) states:

> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

This Court has explained:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is

---

[8] We reiterate that we need only agree with the orphans' court as to one subsection of Section 2511(a), as well as Section 2511(b), to affirm an order terminating parental rights.  ***See B.L.W.***, 843 A.2d at 384.

nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)), *abrogated in part on other grounds by In re K.T.*, 296 A.3d 1085 (Pa. 2023).

Our Supreme Court has stated that "if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which 'is not always an easy task.'" *K.T.*, 296 A.3d at 1106 (quoting *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013)). In *K.T.*, our Supreme Court explained that "a court conducting the Section 2511(b) needs and welfare analysis must consider more than proof of an adverse or detrimental impact from severance of the parental bond." *Id.* at 1113; *see also id.* at 1110-11 (stating that "by evaluating the impact of severance to determine if it will impose more than an adverse or detrimental impact, courts correctly refine their focus on the child's development and mental and emotional health rather than considering only the child's 'feelings' or 'affection' for the parent, which even badly abused and neglected children will retain" (citations and footnote omitted)). Indeed, the *K.T.* Court emphasized that "the parental bond is but one part of the overall subsection (b) analysis, which includes a determination of whether the

bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *Id.* at 1113.

"Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268 (citation omitted). Courts must consider "the child's need for permanency and length of time in foster care[;] whether the child is in a pre-adoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical and emotional needs, including intangible needs of love, comfort, security, safety, and stability." *K.T.*, 296 A.3d at 1113 (footnote omitted and formatting altered).

In weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *T.S.M.*, 71 A.3d at 269. "Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

Here, the orphans' court explained:

> While it is clear Mother loves [] Children and they love her, it is also clear that [] Children need and desire stability and permanency which Mother is unable to provide. [] Children are together and navigating a new life in a safe and stable environment where all of their needs are being met. At the time of trial Mother remained incarcerated on charges of Endangering the Welfare of Children without a resolution or release date in sight. [] Children's permanency cannot be put on hold in the hopes that upon Mother's release from prison she would somehow

> be able to recognize and remedy circumstances she continues to fail and acknowledge. The fact that termination of Mother's parental rights is in the best interest of [] Children can best be summed up by S.E.N., who at eight (8) years old [is] able to recognize what Mother cannot, "I want you to tell my mom that I love her, but I am happy and I'm having fun."

Orphans' Ct. Op. at 15-16.

Following our review of the record, we discern no abuse of discretion by the orphans' court in concluding that termination of Mother's parental rights would best serve Children's developmental, physical, and emotional needs and welfare. *See K.T.*, 296 A.3d at 1113; *T.S.M.*, 71 A.3d at 267. We also conclude that the trial court's findings are supported by the record. *See H.H.N.*, 296 A.3d at 1263. As explained above, "the parental bond is but one part of the overall subsection (b) analysis[.]" *See K.T.*, 296 A.3d at 1113. Further, the focus of the Section 2511(b) analysis is on a child's development and mental and emotional health, not the child's affection for a parent. *See id.* at 1110-11.

Here, Ms. Bielak testified that S.E.N., J.J.S., and K.E.S. are thriving in the care of their pre-adoptive foster parent and the foster parent "is committed to [] Children." *See* N.T. TPR Hr'g, 12/11/24, at 44-52. Additionally, Ms. Bielak testified that S.E.N. and J.J.S. requested to have continuing contact with their former foster family but neither requested contact with Mother. *See id.* at 57. Lastly, as the orphans' court explained, although S.E.N. still loves Mother, S.E.N. is happy living with her foster parent and does not wish to return to Mother's care. *See* Orphans' Ct. Op. at 16;

N.T. TPR Hr'g, 12/11/24, at 46. The record supports the trial court's conclusion that termination of Mother's parental rights best meets the needs and welfare of Children, and termination will not have an adverse impact on Children.

For these reasons, we discern no abuse of discretion by the orphans' court in concluding that termination was appropriate under Section 2511(b). *See H.H.N.*, 296 A.3d at 1263. Therefore, Mother is not entitled to relief, and we affirm the decrees terminating Mother's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

Decrees affirmed. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>10/21/2025</u>